7

United States District Court
Southern District of Texas
FILED

DEC 14 1998

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GILBERTO M. RODRIGUEZ,        {
Individually and on Behalf of     {
his Minor Daughter, MEGAN      {
SUZANNE RODRIGUEZ; and       {         CIVIL ACTION NO. B-98-163
STEPHEN L. WILLIAMS and Wife,   {
ROBYN S. WILLIAMS, Surviving    {
Beneficiaries of the Deceased     {
                            {      **(AN ORAL HEARING IS REQUESTED)**
V.                          {
                            {
CITY OF HARLINGEN, TEXAS;     {
R.D. MOORE and JIM SCHOEPNER    {



## DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(6)

Respectfully Submitted,

Tom Lockhart (Attorney in Charge)
Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
RHughes@adamsgraham.com

Attorneys for Defendants, CITY OF HARLINGEN; and
R.D. MOORE and JIM SCHOEPNER

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; FAX: 956/686-1276

Attorneys for Defendant, R.D.MOORE

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INDEX OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

I.      Statement of Nature and Stage of the Proceedings . . . . . . . . . . . . . . . . . . . .  1

II.     Statement of the Issues  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.    Plaintiffs' Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

IV.     Complaint Fails to State "Excessive Force" Claim Under § 1983 . . . . . . . . . . . .  3

        A.      Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

        B.      No Fourth Amendment "Excessive Force"
                Claim Absent A "Seizure" by Government Officers . . . . . . . . . . . . . . . .  4
        V.      Complaint Fails to Raise Substantive Due Process Claim  . . . . . . . . . . . . .  6

        A.      Supreme Court and Fifth Circuit Have Not
                Extended "Substantive Due Process" to Require
                Defendants Prevent Harm By A Private Citizen  . . . . . . . . . . . . . . . . .  7

        B.      Complaint Fails to State Facts Showing Defendants
                Put Agent Rodriguez In A Dangerous Environment
                and Stripped Her of the Ability to Defend Herself . . . . . . . . . . . . . . . .  8

        C.      No Complaint Defendants Knew of
                Specific Risk of Harm to Agent Rodriguez . . . . . . . . . . . . . . . . . . . . .  10

        D.      No Complaint That Defendants' Conduct Meets the
                Substantive Due Process "Shocks the Conscience" Test  . . . . . . . . . . . .  10

VI.     Complaint Fails to State Facts That
        Show How A City Policy Caused the Incident  . . . . . . . . . . . . . . . . . . . . . . .  11

VII.    State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

## INDEX OF AUTHORITIES

Page

Cites:

*Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1993) . . . . . . . . . . . . 7

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bd. of County Comm. of Bryan County v. Brown*,
_____ U.S. _____, 117 S.Ct. 1382, 138 L.Ed.2d 227 (1997) . . . . . . . . . . . . . . . 12

*Brandon v. Holt*, 469 U.S. 464,
105 S.Ct. 873, 83 L.Ed.2d 878 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brower v. County of Inyo*, 489 U.S. 593,
109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Callis v. Sellars*, 931 F.Supp. 504 (S.D.Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*City of Canton v. Harris*, 489 U.S. 378,
109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Collins v. Harker Heights*, 503 U.S. 115
112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*County of Sacramento v. Lewis*, _____ U.S. _____,
118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) . . . . . . . . . . . . . . . . . . . 4, 5, 7, 10, 11

*DeShaney v. Winnebago County Dept. of Soc. Serv.*,
489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) . . . . . . . . . . . . . . . . . 2, 5-8

*Doe v. Dallas I.S.D.*, 153 F.3d 211 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Doe v. Hillsboro ISD*, 113 F.3d 1412 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Farmer v. Brennan*, 511 U.S. 825,
114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Golden Spread Council, Inc. v. Akins*,
926 S.W.2d 287 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gonzalez v. Ysleta ISD*, 969 F.2d 745 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) . . . . . . . . . . 4

*Greater Houston Transp. Co. v. Phillips,*
801 S.W.2d 523 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Guidry v. Bank of LaPlace,* 954 F.2d 278 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 3

*Huffman v. County of Los Angeles,* 147 F.3d 1054 (9th Cir. 1998) . . . . . . . . . . . . . . 13

*Johnson v. Dallas ISD,* 38 F.3d 198 (5th Cir. 1994) *cert. denied*
____ U.S. ____, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995) . . . . . . . . . . . . . 8, 10

*Kallstrom v. City of Columbus,* 136 F.3d 1055 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . 8

*Kennedy v. Baird,* 682 S.W.2d 377 (Tex.App.-El Paso 1984, no writ) . . . . . . . . . . 13, 14

*Landol-Rivera v. Cruz,* 906 F.2d 791 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lefall v. Dallas I.S.D.,* 28 F.3d 521 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lefall v. Dallas ISD,* 28 F.3d 521 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Martin v. City of League City,* ____ F.Supp. 2d ____,
1998 WL 692421 (S.D.Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521 (5th Cir. 1996) . . . . . . . . . . 3

*Medeiros v. O'Connell,* 150 F.3d 164 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Monell v. New York City Dept. of Soc. Serv.,*
436 U.S. 658, 98 S.Ct. 2018, 63 L.Ed.2d 61 (1978) . . . . . . . . . . . . . . . . . . . . 11

*Petta v. Rivera,* 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-7, 10

*Praether v. Brandt,* 1998 WL 754644
(Tex.App.-Houston [1st Dist.] 1998, no petn.) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Randolph v. Cervantes,* 130 F.3d 727 (5th Cir. 1997)
*cert. denied* ____ U.S. ____, 119 S.Ct. 65 (1998) . . . . . . . . . . . . . . . . . . 8-10

*Salas v. Carpenter,* 980 F.2d 299 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Sanchez v. Figueroa,* 996 F.Supp. 143 (D.C.Puerto Rico 1998) . . . . . . . . . . . . . . . . . . 5

*Schaefer v. Goch,* 153 F.3d 793 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347 (Tex. 1995) . . . . . . . . . . . . . . . . . 14

*Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . .

*Spillier v. City of Texas City*, 130 F.3d 162 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . .

*Summar v. Bennett*, 157 F.3d 1054 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . .

*Walker v. Harris*, 1924 S.W.2d 375 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Washington v. Glucksberg*, 521 U.S. _____,
    117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . .


Texas Civil Practices & Remedies Code:

    Chap. 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .


United States Code:

    42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-5 ᵒ


Federal Rules of Civil Procedure:

    Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,


United States Constitution:

    Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,
    Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CSxPDF - www.fesisa.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GILBERTO M. RODRIGUEZ,           {
Individually and on Behalf of    {
his Minor Daughter, MEGAN        {
SUZANNE RODRIGUEZ; and           {          CIVIL ACTION NO. B-98-163
STEPHEN L. WILLIAMS and Wife,    {
ROBYN S. WILLIAMS, Surviving     {
Beneficiaries of the Deceased    {
                                 {     **(AN ORAL HEARING IS REQUESTED)**
V.                               {
                                 {
CITY OF HARLINGEN, TEXAS;        {
R.D. MOORE and JIM SCHOEPNER     {

## DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(6)

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants CITY OF HARLINGEN, TEXAS; R.D. MOORE and

JIM SCHOEPNER, and file this their **DEFENDANTS' MOTION TO DISMISS**

**UNDER FRCP 12(b)(6)** and would show the Court as follows:

### I. Statement of Nature and Stage of the Proceedings

Plaintiffs Rodriguez sue for wrongful death under the (1) Texas Tort Claims Act

(Tex. Civ. Prac. & Rem. Code, Chap. 101); and (2) 42 USC § 1983. U.S. Border Patrol

Agent Susan Rodriguez, was shot to death by a private citizen, Ernest Moore. Plaintiffs

claim he used a rifle belonging to the Harlingen Police Department issued to his father,

Harlingen Police Detective R.D. Moore.

1

Plaintiffs filed this suit on November 9, 1998. Defendants file their Motion to Dismiss under Fed.R.Civ.Pr. 12(b)(6). A companion motion has been filed by Defendants Moore and Schoepner based on qualified immunity.

## II. Statement of the Issues

1.     Whether a claim that a private citizen shot Susan Rodriguez using a rifle taken from Defendants' possession or control states an "excessive force" claim under either the Fourth or Fourteenth Amendments, U.S. Constitution.

2.     Whether the Complaint is an artful attempt to "plead around" the holding in *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that the Fourteenth Amendment Due Process Clause does not require public officials prevent a third party from harming Susan Rodriguez.

3.     Whether an exception exists to *DeShaney* for a risk of harm allegedly created by the Defendants if they did not force Susan Rodriguez to encounter the danger and the Defendants did not remove her ability to protect herself or escape the risk.

4.     Whether Plaintiffs have alleged that any deprivation of constitutional rights resulted from a municipal custom or policy.

5.     Whether Plaintiffs' allegations that Defendants' negligently failed to destroy or properly secure the rifle state a duty or breach of duty under state tort law.

## III. Plaintiffs' Allegations

Plaintiffs' Complaint, ¶ 10, alleges that U.S. Border Patrol Agent Rodriguez responded to a call for assistance in the apprehension of Ernest Moore at the residence of his father, Detective Moore. As Agent Rodriguez left the Moore residence, Ernest Moore shot her using a rifle issued to his father, Detective Moore. Complaint, ¶ 11.

2

The Complaint, ¶ 12, alleges that the City and Police Chief Schoepner issued the rifle to Det. Moore, leaving it to his discretion as to how to store it. There is no allegation that Detective Moore was incompetent or otherwise an improper person to whom to entrust a rifle; there is no allegation that the City knew or should have known that Detective Moore was likely to entrust his weapon to incompetent third parties. There is no allegation that Detective Moore was in need of training or instruction on the proper storage and security of rifles.

The Complaint, ¶ 11, states that Detective Moore stored it in his home, and that his son took the rifle. However, there is no allegation that Detective Moore gave or entrusted the rifle to Ernest Moore. Instead, the Complaint, ¶ 19, asserts only that he failed to properly secure the rifle.

The Complaint, ¶ 17, alleges only one legal basis for liability under 42 USC § 1983: an "excessive force" claim under the Fourth Amendment, U.S. Const.

IV. Complaint Fails to State "Excessive Force" Claim Under § 1983

A. Standard of Review

Under Rule 12(b)(6), the court must accept the allegations as true and must view them in the light most favorable to plaintiffs, drawing all reasonable inferences in favor of the pleader. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Dismissal under Rule 12(b)(6) is correct when it appears that no relief can be granted under any set of facts that could be proven consistent with the allegations. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996). However, the Complaint must state facts, not conclusions, to survive a Rule 12(b)(6) challenge. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

3

B.    No Fourth Amendment "Excessive Force"
      Claim Absent A "Seizure" by Government Officers

42 USC § 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490 U.S.

386, 393, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).   The first inquiry is to isolate the

precise provision of the federal Constitution that is allegedly infringed. *Graham*, 490 U.S. at

394, 109 S.Ct. at 1870.   The Fourth Amendment applies when the alleged use of excessive force

arises from a search or seizure of the person. *Graham*, 490 U.S. at 394, 109 S.Ct. at 1871;

*County of Sacramento v. Lewis*, _____ U.S. _____, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043

(1998). A "seizure" occurs only when government agents deliberately cause the termination of

an individual's freedom through means intentionally applied to that individual. *Lewis, Id.* at 115;

*Brower v. County of Inyo*, 489 U.S. 593, 596-597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628

(1989).   If the Complaint does not show a "seizure" under the Fourth Amendment, then

an"excessive force" claim can be sustained only under a Fourteenth Amendment "Substantive Due

Process" analysis. *Lewis*, 118 S.Ct. at 1715-1716; *Petta v. Rivera*, 143 F.3d 895, 910-911 (5th

Cir. 1998).

In *Lewis*, the Supreme Court made it clear that a Fourth Amendment "seizure" occurred

only when the government caused an intended termination of freedom of movement through

means intentionally applied to that individual.  118 S.Ct. at 1715 (instigating chase of motorcycle

on which plaintiff was a passenger was not a Fourth Amendment "seizure").   Consequently,

unintended injuries to bystanders or hostages during an arrest are not a "seizure" under the Fourth

Amendment. *Lewis*, 118 S.Ct. at 1715; *Landol-Rivera v. Cruz*, 906 F.2d 791, 795-96 (1st Cir.

1990) (police officer who inadvertently shot hostages while aiming to hit kidnapper did not

"seize" hostage for Fourth Amendment purposes); *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir.

4

1998) (accidental shooting of wife held hostage by husband was not a "seizure" under [i]

Amendment, even though police officers had surrounded their house and instructed wife t...

down"). Likewise, there is no Fourth Amendment claim when the force is not d...

deliberately at the plaintiff. *Petta*, 143 F.3d at 901; *Medeiros v. O'Connell*, 150 F.3d 164,

(2nd Cir. 1998); *Sanchez v. Figueroa*, 996 F.Supp. 143, 147 (D.C.Puerto Rico 1998).

Moreover, the application of force must be done by a state official, not a private cit...

A State's failure to protect an individual against violence caused by another citizen general...

not constitute a § 1983 claim. *DeShaney*, 489 U.S. at 195-200, 109 S.Ct. at 1003-1006; *...*

*v. City of League City*, _____ F.Supp. 2d _____, 1998 WL 692421, *2 (S.D.Tex. 1998`

termination of individual liberty must be caused by the <u>government</u>. *Brower*, 489 U.S. at ...

109 S.Ct. at 1381. The plaintiff must rely on "Substantive Due Process" under the Fourt...

Amendment when their constitutional right to life has been terminated by other than a sei...

a law enforcement officer. *Lewis*, 118 S.Ct. at 1716. *See, also, Schaefer*, 153 F.3d ...

(husband's physical control over wife/hostage precluded Fourth Amendment claim that po...

"seized" her).

C.  No Fourteenth Amendment "Excessive Force"
<u>Claim if Force Applied by Private Citizen</u>

Even were Plaintiffs to replead to assert an "excessive force" claim under Fourt...

Amendment Due Process Clause, the pleadings would fail for the same reason; th...

intentionally applying the force is not a public official. If plaintiff claims that a private c...

committed the act of violence, then plaintiff's Fourteenth Amendment claim rests on "Sub...

Due Process," not "excessive force."  *See, Salas v. Carpenter*, 980 F.2d 299, 306-09 (...

1992).

CVAPDF - www.fdfdf.com

In *Salas*, plaintiffs brought a wrongful death suit for the death of a hostage, when the sheriff's negotiation tactics failed and the kidnapper shot the abductee. The Fifth Circuit stated that "artful pleading" could not obscure that there was no deprivation of any Fourteenth Amendment Due Process right. 980 F.2d at 306. A claim that the sheriff failed to prevent harm done by a third party was a "Substantive Due Process" claim that could survive, if at all, if the court permitted an exception to *DeShaney*. 980 F.2d at 308-310.

*Petta v. Rivera, supra,* can easily be distinguished because (1) DPS troopers applied the "excessive force," not private citizens; and (2) the DPS troopers used excessive force to arrest the driver which force also injured the passengers. *Petta* indicates Fourth and Fourteenth Amendment cases overlap at several points. 143 F.3d at 912-914. Therefore, an "excessive force" claim under Fourth Amendment Due Process would still require (1) public official applied the force that caused injury; and (2) the officers used excessive force to seize someone. Here, neither is the case. Plaintiffs do not allege "excessive force" was used to arrest Ernest Moore or anyone else.

Whether asserted under Fourth or Fourteenth Amendment, Plaintiffs' "excessive force" claims must fail. No government employee intentionally and deliberately applied force to Agent Rodriguez to deliberately terminate her freedom. Rather, she was shot by a private citizen. Plaintiffs' "excessive force" claim is precisely the kind of "artful pleading" condemned in *Salas*.

## V.  Complaint Fails to Raise Substantive Due Process Claim

Shorn of rhetoric, the core of Plaintiffs' Complaint is that a private citizen shot Agent Rodriguez, using a rifle allegedly taken from Det. Moore due to inadequate security measures. Claims of injury to hostages and bystanders from police action can succeed only through "Substantive Due Process" under the Fourteenth Amendment. However, the Fourteenth

6

Amendment "Due Process" Clause does not require government officials to prevent third parties from harming the plaintiff. The Fifth Circuit has yet to adopt the "state-created" danger doctrine as an exception to *DeShaney*. Even if this Court were to find the doctrine viable, the Complaint fails to state such a claim.

Claims of injury to hostages and innocent bystanders can arise only under the Fourteenth Amendment Due Process Clause, i.e., "Substantive Due Process." *Lewis*, 118 S.Ct. at 1716; *Schaefer*, 153 F.3d at 797; *Medeiros*, 153 F.3d at 169; *Petta*, 143 F.3d at 901. However, the Courts have been reluctant to expand "Substantive Due Process" claims; courts are cautioned to exercise the utmost care in breaking new ground by invoking that doctrine. *Washington v. Glucksberg*, 521 U.S. _____, 117 S.Ct. 2258, 2269, 138 L.Ed.2d 772 (1997); *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068-1069, 117 L.Ed.2d 261 (1992). The Supreme Court has generally restricted, rather than expanded, Substantive Due Process claims. *See, for example, Washington*, 521 U.S. at _____, 117 S.Ct. at 2275 (no right to assisted suicide); *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1993) (no right under Substantive Due Process to be free from criminal charges initiated without probable cause).

A.   Supreme Court and Fifth Circuit Have Not
     Extended "Substantive Due Process" to Require
     Defendants Prevent Harm By A Private Citizen

In *DeShaney*, the Supreme Court plainly stated that the Fourteenth Amendment's Due Process Clause was triggered only by affirmative government action and put no duty on government officials to act to prevent a third party from harming the claimant. 489 U.S. at 196-197, 109 S.Ct. at 1004. The court neither approved nor disapproved of a rule imposing liability if the State created the risk of harm to which it forced the claimant to suffer, i.e., an exception for "stated-created" danger. *Id.*

7

Though often asked to do so, the Fifth Circuit has consistently declined to adopt the "state-created danger" rule. *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997) *cert. denied* _____ U.S. _____, 119 S.Ct. 65 (1998); *Doe v. Hillsboro ISD*, 113 F.3d 1412, 1415 (5th Cir. 1997)(en banc);*Johnson v. Dallas ISD*, 38 F.3d 198, 201 (5th Cir. 1994) *cert. denied* 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995). The Fifth Circuit has cast doubt on whether it is a viable exception to *DeShaney. Lefall v. Dallas ISD*, 28 F.3d 521, 530 (5th Cir. 1994). In *Johnson*, the Court questioned whether it could ever meet the "demanding standard for constitutional liability." 38 F.3d at 201.

Though the Fifth Circuit has declined to adopt the "state-created danger" rule, it has described its elements as:

1.  The government officials must create the dangerous situation;

2.  They must know the situation is dangerous;

3.  The danger must create an opportunity for a third party to commit a crime which would not otherwise exist; and

4.  They must affirmatively place the plaintiff in a position of danger in such a way as to strip the plaintiff of her ability for self defense.

*Randolph*, 130 F.3d at 731; *Johnson*, 38 F.3d at 201. The officials' actions must place the plaintiff at a specific risk, as opposed to a risk that affects only the public generally. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1997). The official must have actual knowledge that the risk of harm exists. *Doe*, 113 F.3d at 1415.

B.    Complaint Fails to State Facts Showing Defendants
      Put Agent Rodriguez In A Dangerous Environment
      and Stripped Her of the Ability to Defend Herself

Here, the allegations conclusively acknowledge that Defendants did not force Agent Rodriguez into a dangerous situation nor did they strip her of her ability of self defense. Here,

8

though Agent Rodriguez allegedly responded to a call for help, she had no duty to obey the alleged request. Agent Rodriguez' freedom of action conclusively disproves this element. *See, for example, Randolph*, 130 F.3d at 731; *Callis v. Sellars*, 931 F.Supp. 504, 513, 520 (S.D.Tex. 1996); *Summar v. Bennett*, 157 F.3d 1054, 1059 (6th Cir. 1998).

In *Randolph*, the state social worker convinced a mentally retarded plaintiff to live in a halfway house; plaintiff accidentally injured herself when she encountered a neighbor's diabetic syringe. The Fifth Circuit held that Randolph's freedom of movement precluded any "state-created danger" argument. 130 F.3d at 731.

In *Summar*, the parents of a murdered confidential informant filed a § 1983 suit against police officers who had revealed the informant's identity in response to discovery in a criminal suit. After the informant's name was revealed, the criminal defendant directed an accomplice to murder the informant. 157 F.3d at 1057. The Sixth Circuit upheld a dismissal of the complaint against a "state-created danger" Fourteenth Amendment claim. The Court found it critical that the decedent voluntarily elected to serve as a confidential informant, knowing the risk that he might have to testify and reveal his identity. 157 F.3d at 1059.

In *Callis*, plaintiff claimed she had been sexually molested by a traffic officer. The police department convinced her to assist in a "sting" operation, in which she agreed to meet the traffic officer under the surveillance and protection of the two detectives. Plaintiff alleged that, during the first meeting of the "sting," the traffic officer again molested her and the detectives failed to intervene. The Houston Division (Atlas, J.) held that the allegations failed to raise the "state-created danger" doctrine. 931 F.Supp. at 520. The Court concluded that, because the plaintiff volunteered to put herself into this situation, her conduct failed to raise a "state-created" danger theory, if it were adopted. *Id.* at 513, 520.

9

Simply because Agent Rodriguez came to the Moore residence did not make her

vulnerable. *See, for example, Randolph*, 130 F.3d at 731 (social worker's encouragement

plaintiff to live at halfway house did not create opportunity that would not otherwise have t

for crime to occur). The Complaint fails to show that the Defendants stripped Agent Rodrig

of means to defend herself and cut off from all sources of aid. She could leave when she

The Complaint, ¶ 11, states she was *leaving* the house when shot. There can be no clai

Harlingen did or could force a federal agent into a position of harm from which she co

extricate herself. *Compare, Johnson*, 38 F.3d at 202.

C.    No Complaint Defendants Knew of
       Specific Risk of Harm to Agent Rodriguez

Moreover, the pleadings must show actual knowledge of the risk of harm which they

created. *Johnson*, 38 F.3d at 201. Therefore, Plaintiffs' pleadings must show that Defendan

were actually aware of an extreme risk of harm that a private citizen would acquire the

and shoot Agent Rodriguez. *Johnson*, 38 F.3d at 201-02; *Lefall v. Dallas I.S.D.*, 28 F.3d

531 (5th Cir. 1994). The pleading is totally devoid of anything that would suggest

knowledge by Defendants that, absent adequate security of weapons, rifles were certain t

stolen and used to kill other peace officers.

D.    No Complaint That Defendants' Conduct Meets the
       Substantive Due Process "Shocks the Conscience" Test

A Substantive Due Process claim requires proof that the public officer's actions we

grossly disproportionate to the need for action under the circumstances that they were ins

by zeal rather than carelessness and amounted to an abuse of official power that shock

conscience. *Lewis*, 118 S.Ct. at 1717-1718; *Petta*, 143 F.3d at 902. Gross negligen

insufficient. *Lewis, Id.* at 1718. While the standard is sufficiently flexible to take into ac

10

all the circumstances, the standard is still conduct would "shock the conscience." *Id.* at 1719-1720.  Mere labels such as "reckless, oppression, fraud or malice" are insufficient to state a Substantive Due Process claim. *Id.* at 1720-1721.

The Complaint wholly fails to state that Det. Moore acted with deliberate indifference or that his conduct "shocks the conscience."   Under *Lewis*, Plaintiffs have failed to state a Substantive Due Process claim against Det. Moore.

The only allegation against Police Chief Schoepner is that, with deliberate indifference, he failed to provide adequate training and supervision concerning use and security of the rifle. Complaint, ¶ 13.  The Complaint is devoid of any facts showing how, under the circumstances, his alleged failure to train meets the "shocks the conscience" test.  Plaintiffs do not allege that Det. Moore was deficient in his knowledge concerning proper use or storage; they do not allege Defendants knew of circumstances that would show the weapon would most certainly be taken without permission and used to commit violence.[1]  The Complaint, ¶ 12, alleges that the City of Harlingen was deliberately indifferent by entrusting Officer Moore with possession of the rifle and giving him unfettered discretion as to its use or storage.  Again, ¶ 12 is devoid of any facts showing how entrusting Det. Moore with the rifle without restrictions meets the "shock the conscience" test.

## VI.  Complaint Fails to State Facts That Show How A City Policy Caused the Incident

Defendant City of Harlingen is not vicariously liable for the acts of its employees. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 63 L.Ed.2d 61 (1978).  To

---

[1]  To the extent that the Complaint, ¶ 13, makes a similar "failure to train" allegation against Defendant City of Harlingen, it is deficient for the same reasons.

11

hold the City liable, Plaintiffs must show that a final policymaker for the police department adopted a "policy" with a deliberate indifference to its known or obvious consequences. *Bd. of County Comm. of Bryan County v. Brown*, _____ U.S. _____, 117 S.Ct. 1382, 1388, 138 L.Ed.2d 227 (1997). To the extent the Complaint asserts claims against Police Chief Schoepner and Det. Moore in their "official capacities," then this suit is treated as one against the City alone, for which Plaintiffs must still prove the injuries resulted from a City "policy." *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). To survive a Rule 12(b)(6) challenge, the Complaint must state facts, not conclusions, describing the policy and its relation to the constitutional violation. *Spillier v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

The Complaint, ¶¶ 12-13, is not clear as to whether Plaintiffs allege that the City had an *explicit* policy to entrust weapons without instructions on security or that the City simply had no policy at all. The latter cannot be a "policy" for the purposes of § 1983. A failure to adopt a policy may not serve as a basis for a § 1983 policy, unless the failure amounts to an *intentional* choice, not merely an unintentional oversight. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Doe v. Dallas I.S.D.*, 153 F.3d 211, 217 (5th Cir. 1998).

Assuming the Complaint alleges the policy was an intentional choice, it still fails to state a "policy" actionable via § 1983. To qualify as a "policy" for § 1983 liability, the "policy" must be unconstitutional on its face or adopted with deliberate indifference to the certainty that a constitutional violation will result. *Snyder v. Trepagnier*, 142 F.3d 791, 795-796 (5th Cir. 1998); *Gonzalez v. Ysleta ISD*, 969 F.2d 745, 754-760 (5th Cir. 1992). For the official to adopt such a policy with deliberate indifference, the official must be aware of facts from which an inference

12

could be drawn that a substantial risk of serious harm exists and he must also draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

*See, for example, Huffman v. County of Los Angeles*, 147 F.3d 1054, 1060 (9th Cir. 1998) In *Huffman*, the county sheriff had a policy requiring all deputies to carry firearms at all times, even off-duty. An off-duty deputy became embroiled in a drunken bar fight over a woman and shot the plaintiff. 147 F.3d at 1056. The Ninth Circuit affirmed summary judgment against a claim that the county policy of carrying firearms at all times without specific warnings concerning the danger of becoming drunk was insufficient. A failure to give warnings or instructions did not establish the county's policies violated the Constitution. *Id.* at 1060.

Here, the Complaint wholly fails to state facts showing that the City's policymakers adopted such a policy with knowledge or awareness of a substantial risk that the rifle would be taken and used to harm other people. The Complaint does not allege that Det. Moore's alleged failure to safeguard the rifle itself amounts to deliberate indifference or "conscience shocking" behavior on his part; it alleges only that his actions amounted to negligence. Because Plaintiffs do not claim that Det. Moore's acts were a constitutional violation, there is either no "policy" or the "policy" was not a moving force that caused constitutional violation.

VII.   State Law Claims

Plaintiffs do not claim that Defendants entrusted the rifle to Ernest Moore. Rather, their pleading is premised on the theory that he took it without Detective Moore's knowledge or consent. The negligence claim focuses on inadequate security for the rifle, not entrustment to Ernest Moore.

Texas cases have held that a negligent entrustment of a firearm to an incompetent user may be actionable. *Kennedy v. Baird*, 682 S.W.2d 377, 388 (Tex.App.-El Paso 1984, no writ);

13

*Praether v. Brandt*, 1998 WL 754644, *4 (Tex.App.-Houston [1st Dist.] 1998, no petn.). However, neither *Praether* nor *Kennedy* stated that there can be liability for failing to prevent the weapon from being taken without permission.

To the extent the Complaint alleges that Defendants negligently failed to destroy the rifle, it fails to state facts creating a state law tort duty. Whether the facts raise a legal duty to exercise ordinary care is a law question for the Court. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The Court must weigh the nature of the risk, the foreseeability of the risk, and the probability of injury against the utility of the defendant's conduct, imposing a burden upon the defendant to guard against said injury, and the magnitude of such a burden. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289-90 (Tex. 1996). The foreseeability of harm is not alone sufficient to create a duty to exercise ordinary care. *Golden Spread Council*, 926 S.W.2d at 290-291; *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995). Generally, a person has no duty to protect another from the criminal acts of a third party or otherwise control a third party to prevent harm. *Walker v. Harris*, 1924 S.W.2d 375, 377 (Tex. 1996).

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants CITY OF HARLINGEN,

TEXAS; and R.D. MOORE and JIM SCHOEPNER pray the above and foregoing be taken under

submission and upon hearing same, the Court grant the relief requested, dismiss all or part of the

claims alleged, or grant any other such further relief to which they may show themselves entitled.

Respectfully submitted,

By: _____

TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
Attorney-in-Charge for Defendants, CITY
OF HARLINGEN, TEXAS; R.D. MOORE
and JIM SCHOEPNER

OF COUNSEL:

ADAMS & GRAHAM, L.L.P.
Roger W. Hughes
Texas State Bar No. 10229500

PASSMORE, WALKER & TWENHAFEL, L.L.P.
Walter J. Passmore
State Bar No. 15560400
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; FAX: 956/686-1276
Attorney for R.D. MOORE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this ___ day of December 1998, to the following counsel of record and interested parties:

Attorney for Plaintiffs GILBERTO M. RODRIGUEZ, et al:

Mr. Michael Greenberg                          Fax   (512) 327-8354
LAW OFFICES OF RICHARD PENA, P.C.              CM RRR Z 348 018 992
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, TX 78746-5747

Attorney of record for Defendant, R.D. MOORE:

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766

TOM LOCKHART

16