# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 2 1999

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| GILBERTO M. RODRIGUEZ, | § | |
| INDIVIDUALLY AND ON BEHALF OF | § | |
| HIS MINOR DAUGHTER, MEGAN | § | |
| SUZANNE RODRIGUEZ, AND | § | |
| STEPHEN L. WILLIAMS AND WIFE, | § | |
| ROBYN S. WILLIAMS, SURVIVING | § | |
| BENEFICIARIES OF THE DECEASED | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-98-163 |
| | § | |
| | § | JURY DEMANDED |
| CITY OF HARLINGEN, TEXAS | § | |
| | § | |
| AND | § | |
| | § | |
| R.D. MOORE AND | § | |
| JIM SHEOPNER | § | |

## FIRST AMENDED COMPLAINT

Leave of Court first having been granted, Plaintiffs amend their complaint and state as follows:

## I.

### Preliminary Statement

1.     Plaintiffs Gilberto M. Rodriguez, Individually and on behalf of his minor daughter, Megan Suzanne Rodriguez, are United States citizens and are the surviving spouse and daughter of Susan Lynn Rodriguez.  Plaintiffs Stephen L. Williams and Robyn S. Williams are United States citizens and are the surviving natural parents of Susan Lynn Rodriguez, who was subjected to the deadly use of force in violation of rights guaranteed to her by the Fourth and Fourteenth Amendments to the United States Constitution.  They commence this action pursuant to 42 U.S.C.§1983, which provides in

1

relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of rights, privileges, or immunities secured by the Constitution and laws of the United States, and for the loss of the liberty and property interests of Susan Lynn Rodriguez and Plaintiffs.

2.     Plaintiffs seek compensatory damages, punitive damages and reasonable attorneys' fees as authorized by and pursuant to 42 U.S.C§1988.

## II. Jurisdiction

3.     42 U.S.C.§1983 and 42 U.S.C. §1988 provide jurisdiction over plaintiffs' constitutional claims for redress, which are conferred on this Honorable Court by 28 U.S.C.§1343(a)(3). Federal question jurisdiction is conferred on this Honorable Court by 28 U.S.C.§1331, because this action arises under the Constitution and laws of the United States. This Honorable Court has pendant jurisdiction over all claims asserted under the laws of the State of Texas, pursuant to 28 U.S.C.§ 1367(a).

## III. Jury Trial Demand

4.     Plaintiffs demand a trial by jury.

## IV. Parties

### Plaintiffs

5.     Plaintiffs Gilberto M. Rodriguez and Megan Suzanne Rodriguez are the surviving beneficiaries of  Susan Lynn Rodriguez (herinafter "your decedent") as husband and daughter, respectively.  Gilberto M. Rodriguez and Megan Suzanne Rodriguez are citizens of the United States and were residents of Cameron County, Texas, at the time of

the incident made the basis of this lawsuit (hereafter "the incident".)  Plaintiffs Gilberto

M. Rodriguez and his minor daughter, Megan Suzanne Rodriguez, are now residents of

Travis County, Texas.

**6.**      Plaintiffs, Stephen L. Williams and wife, Robyn S. Williams, are the natural

parents and are survivors of Susan Lynn Rodriguez.  They are and were at all relevant

times citizens of the United States and residents of Philadelphia, Tennessee.

**7.**      Susan Lynn Rodriguez, your decedent, was a resident of Cameron County, Texas,

on July 7, 1998, the date of the shooting that resulted in her death.  She was 28 years old,

had attained four years of university study and had served as a United States Border

Patrol Agent since September of 1992.

**8.**      Plaintiffs are all beneficiaries entitled to bring this action pursuant to Section

71.004 and 71.021 of the Texas Civil Practices and Remedies Code, the Texas Wrongful

Death Statute and The Texas Survival Statute, respectively.  Their respective names and

relationships to Susan Lynn Rodriguez, your decedent, are:


| NAME | RELATIONSHIP TO DECEDENT |
| --- | --- |
| GILBERTO M. RODRIGUEZ | HUSBAND |
| MEGAN SUZANNE RODRIGUEZ | DAUGHTER |
| STEPHEN L. WILLIAMS | FATHER |
| ROBYN S. WILLIAMS | MOTHER |


### Defendants

**9.**      Police Detective Ralph D. Moore is and was at all relevant times a resident of

Cameron County, Texas, was employed as a Police Officer and Detective by the City of

Harlingen, Texas, and acted under color of law as a Police Officer and Detective

3

employed by the City of Harlingen. It was and is Detective Moore's responsibility and duty not to improperly possess deadly weapons and to properly secure deadly weapons coming into his possession, care, custody or control from the City of Harlingen, all to prevent their access to, and unlawful use by, others against citizens. It is also Detective Moore's responsibility and duty to comply with minimum constitutional requirements and to know and to comply with all constitutional and lawful policies, procedures, practices and customs of the City of Harlingen, Texas. It was Detective Moore's responsibility to know and to comply with all laws, including the Constitution and laws of the United States and of the State of Texas, governing the performance of his duties and not to be intentionally, deliberately, or consciously indifferent to any of those responsibilities or to the constitutional rights of others. In all of these responsibilities material to this lawsuit, he failed while acting under color of state law.

10.     Police Chief Jim Sheopner was at all relevant times employed as the Chief of Police for the City of Harlingen Police Department and acted under color of law in that capacity. It was Police Chief Sheopner's responsibility and duty to ensure that all deadly weapons, owned or turned into the Harlingen Police Department or coming into its possession, custody, and control, and those of any of its personnel, were properly stored and secured in the custody of the Harlingen Police Department, so that, among other things, those weapons would not be accessible to anyone other than designated police personnel and so that no one other than designated police personnel could use them. It was also Chief Sheopner's responsibility and duty to know and to comply with minimum constitutional requirements; to know and to comply with all lawful policies, procedures, practices and customs of the City of Harlingen; and to implement and to enforce proper policies and procedures to ensure that the Harlingen Police Department and its personnel were not intentionally, deliberately, or consciously indifferent to the lives and safety of citizens, including its own and other law enforcement officers. It was Chief Scheopner's

4

responsibility to know and to comply with all laws, including the Constitution and laws of the United States and of the State of Texas, governing the performance of his duties and the duties of all police officers employed by the City of Harlingen Police Department, and not to be, and not to allow officers to be, intentionally, deliberately, or consciously indifferent to any of his or their responsibilities or to the constitutional rights of others. In all of those responsibilities material to this lawsuit, he failed while acting under color of state law.

11.     The City of Harlingen, Texas, is a municipality and a political subdivision of the State of Texas, located within the boundaries of the Brownsville Division of the United States District Court for the Southern District of Texas, where all acts and omissions alleged herein occurred. It was and is the responsibility of the City of Harlingen, Texas, to properly hire, train, supervise, test, and discipline City of Harlingen Police Department officers and to implement and to enforce proper policies and procedures to ensure that it and its officers were and are not intentionally, deliberately, or consciously indifferent to the lives and safety of citizens, including law enforcement officers. It was and is the City of Harlingen's responsibility and duty to promulgate, to implement, and to enforce policies and procedures regarding the disposal, storage and security of deadly weapons over which it and its personnel had and have jurisdiction, possession, care, custody, or control.

12.     For all things, all officers and employess of the City of Harlingen who are identified by name or reference herein at all times acted in bona fide pursuance of general authority to act for the City of Harlingen on the subjects and matters to which their acts relate, which acts were and are imputed to the City of Harlingen. Harlingen Chief of Police Jim Sheopner had final authority to make and establish policy governing the operations of the City of Harlingen Police Department, and the conduct of its officers and personnel. Harlingen Chief of Police Jim Sheopner had full authority to resign or remove

5

himself as Chief of Police of the City of Harlingen Police Department at any time.

## IV. FACTS

### Background

**13.** In 1996, a Harlingen citizen, Sylvia Pirtle, a physician's wife, delivered possession and ownership of an AR-15 semi-automatic assault rifle to the Harlingen Police Department, for one – and only one – purpose: **to destroy it**. She was afraid of burglary and that the assault rifle could fall into the dangerous hands of criminals.

**14.** Chief of Police Scheopner possessed and controlled the rifle as custodian for the Harlingen Police Department and the City of Harlingen, Texas.

**15.** Contrary to the sole and express purpose for which Mrs. Pirtle transferred to the Harlingen Police Department, the AR-15 semi-automatic assault rifle **was never destroyed**.

**16.** Instead, Chief of Police Scheopner and the City of Harlingen officially issued, approved, allowed , or ratified the issuance of the AR-15 semi-automatic assault rifle to Harlingen Police Detective Moore for use as a service weapon, on condition, representation or agreement that he store the assault rifle in the trunk of his assigned unit.

**17.** Detective Moore never initially trained or qualified in the proficient use of that AR-15 assault rifle before it was issued to him or before the incident. Detective Moore neither demonstrated nor was ever required to demonstrate proficiency in the use of that AR-15 assault rifle before it was issued to him or before the incident. Those omissions constituted an intentional, deliberate, or conscious indifference by all defendants to the lives and safety of citizens, including law enforcement officers.

**18.** Those omissions did not even remotely meet existing minimum statewide proficiency standards for that type of weapon. Those standards had already been in place

6

and had even been published, on a statewide basis, since January 5, 1988 – for more than 10 years prior to the incident - of which all defendants had actual and constructive notice by virtue of §211.104 of the Administrate Rules of the Texas Commission On Law Enforcement Officer Standards and Education..

**19.**     Detective Moore never did comply, nor was he ever required to comply, with those minimum standards by the City of Harlingen or by Chief Jim Scheopner whom issued, approved the issuance, allowed or ratified the issuance to Detective Moore of that weapon.  This occurred, even though (1) the owner of that weapon had tendered it to the Harlingen Police Department on condition that **it be destroyed** even though (2) Detective Moore performed no duties which entailed or ever involved his use of that AR-15 assault rifle, and finally, even though (3) the City of Harlingen and its Police Department had no SWAT team or Emergency Response Team – for which team, when it existed years earlier, Detective Moore had never been trained nor was ever a member – which entailed or required the use of that AR-15 assault rifle.

**20.**     The City of Harlingen and Chief Scheopner never requested nor required the return of that AR-15 assault rifle by Detective Moore and never changed his status of duty because of their non-compliance with that minimum standard, nor did they require or enforce any order or directive to, or condition imposed on or representation or agreement by, Detective Moore that he at all times safe-house said weapon in the trunk of his assigned unit.

**21.**     The AR-15 assault rifle was stored at Detective Moore's residence. Detective Moore stored the rifle in the bedroom of Ernest Moore, Detective R.D. Moore's son, in a Remington rifle safe, not in the trunk of his assigned police unit.

**22.**     Detective Moore's son, Ernest Moore, was known to be psychologically unstable, the medical recipient of prescription psychological drugs, and a cocaine user.

**23.**     Detective Moore knew that son, Ernest Moore, had access to the contents of the

7

rifle safe and to that AR-15 assault rifle.

24.     Before July 7, 1998, the City of Harlingen had determined that the performance by Jim Scheopner of his duties as Chief of Police of the City of Harlingen was neither competent nor reliable. Despite that, the City of Harlingen, acting through its final policy-makers with power to remove Jim Scheopner as Chief of Police, did not remove him before the tragic July 7, 1998, incident.

25.     Before July 7, 1998, Jim Scheopner knew his performance of his duties as Chief of Police of the Harlingen Police Department was neither competent nor reliable; yet, he did not remove himself from that position, which was an intentional, a deliberate, or a conscious indifference to the safe and proper operation of the Harlingen Police Department and to the lives and safety of citizens, including law enforcement officers, it was **supposed to protect**.

26.     Susan Lynn Rodriguez, your decedent, was employed and on duty as a United States Border Patrol Agent on July 7, 1998, in Cameron County, Texas.

27.     On the morning of July 7, 1998, a double homicide was committed in San Benito, Texas.  Ernest Moore was the suspect.  He lived at the home of his parents, Detective and Mrs. R.D. Moore.  Law enforcement agents began their search for the double homicide suspect, Ernest Moore, at the Moores' house.

28.     United States Border Patrol Agents Susan Lynn Rodriguez, your decedent, and Ricardo Guillermo Salinas, and other law enforcement officers responded to a call to assist Cameron County Deputies at the residence of Detective Moore, Mrs. Moore, and Ernest Moore.

29.     Detective Moore was at the residence.  He already knew his son, Ernest Moore, had taken the AR-15 assault rifle, knew his son was mentally unstable, knew his son was prescribed medication to stabilize himself, knew his son was upset over a girlfriend, knew his son had a violent temper, knew his son was a good shot, and knew – before those two

8

Border Patrol Agents arrived at the scene – that his son, that very morning, was already ". . . in some shit. . ." or in ". . . some deep shit. . .", and suspected his son was hiding nearby. Despite all of that, Detective Moore never timely warned – or caused anyone to timely warn – those Border Patrol Agents of all of those facts and that Ernest Moore posed a serious and substantial threat to anyone approaching that area or the residence.

**30.**     Agents Rodriguez and Mike Riley, her partner, approached Moore's residence with Cameron County Deputies in an attempt to search for the double homicide suspect, Ernest Moore, son of Detective Moore.

**31.**     Detective Moore told Border Patrol Agents Rodriguez and Riley that they did not have his consent to enter his house, as his son Ernest was not an illegal alien, and turned them all away.

**32.**     As the they were leaving Defendant Moore's residence and walking back toward their vehicle, Agent Rodriguez met with Agents Orlando Salinas and Agent Ricardo Salinas, when Ernest Moore opened fire at the officers with that AR-15 assault rifle, shooting from a nearby adjacent corn field - with deadly accuracy.

**33.**     Your decedent, United States Border Patrol Agent Rodriguez, was killed with the AR-15 assault rifle which the City of Harlingen and the Chief of Police, Jim Scheopner had allowed Detective Moore to have. That was the very weapon which a concerned citizen had turned into the City of Harlingen Police Department **for destruction** so that it could not fall into the wrong hands and hurt anyone. But it did.

## VI. Federal Claims and Causes of Action

**Defendant, Detective Ralph D. Moore**

**34.**     Plaintiffs hereinto incoporate by reference and repeat all allegations contained in

9

Paragraphs 1 through 32 hereof.

**35.**    Detective Moore, acting under color of law as a police officer of the City of Harlingen Police Department, created the very danger that killed your decedent and others, by allowing – and by continuing to allow – his son, Ernest Moore, access to the AR-15 assault rifle, when he knew his son was mentally unstable, knew his son was supposed to be on prescribed medication to stabilize himself, knew his son was upset over his girlfriend, knew his son was a good shot, knew his son had that AR-15 assault rifle, and knew – before the Border Patrol Agents ever even arrived at the scene – that his son, Ernest Moore, that very day was already ". . . in some shit" or ". . . in some deep shit."

**36.**    In conjunction therewith and otherwise, Detective Moore was guilty of the following and additional acts and omissions, all of which constituted an intentional, deliberate, or conscious indifference to the lives and safety of others; all of which were proximate and producing causes of the injuries to and the death of your decedent, Susan Lynn Rodriguez; and all of which violated the constitutional rights of Susan Lynn Rodriguez and laws that were clearly established at the time:

(A)    Detective Moore received, accepted, possessed, and kept that AR-15 assault rifle, without first qualifying in its proper use, safe storage, and a demonstrated proficient use of that AR-15 assault rifle.

(B)    Detective Moore allowed his son, Ernest Moore access to that AR-15 assault rifle.

(C)    Detective Moore did not effectively deny his son access to that AR-15 assault rifle.

(D)    Detective Moore did not store said weapon in the trunk of his assigned unit.

(E)    Detective Moore, though a police officer, failed to timely warn other

10

officers at the scene and officers enroute to the scene – or to cause them to be timely warned – that his son, Ernest Moore, posed a serious and substantial risk to their lives and safety.

(F)  Detective Moore failed to return said weapon to the City of Harlingen Police Department for safekeepng away from others at times when he was not storing it in his assigned unit.

**Defendant, Chief of Police Jim Scheopner**

**37.**  Plaintiffs hereinto incorporate by reference and repeat all allegations contained in paragraph 1 through 36 hereof.

**38.**  In conjunction therewith and otherwise, Chief of Police Jim Scheopner was guilty of each of the additional and following acts and omissions, each and all of which constituted an intentional, a deliberate, or a conscious indifference to the lives and safety of citizens (including Susan Lynn Rodriguez and other officers); each and all of which proximately caused and resulted in the violations of constitutional and other rights of your decedent, Susan Lynn Rodriguez, to her life liberty and pursuit of happiness under the Constitution of the United States and to the violations of laws that were clearly established at the time by:

(A)  Issuing and authorizing and approving and ratifying the issuance of the AR-15 assault rifle to Detective Moore and by allowing him to keep it when he was not trained and qualified on the use of the weapon, who had not first demonstrated his proficiency with the weapon, who performed no duties for which the weapon was or would be appropriate before the incident, and who was not trained in the safe storage of the weapon away from dangerous and other persons who might have access to the weapon, and when no unit even then existed in the Harlingen Police Department for

11

which the use of that weapon would be appropriate.

(B)     Not enforcing the condition, representation or agreement that Detective Moore store the AR-15 assault rifle in the trunk of his unit assigned to him before the incident.

(C)     Not adopting and not enforcing policies which required that every officer, including Detective Moore, first be trained in the proper use, proficiency, and storage of every weapon and first demonstrate his or her proficiency in every weapon before it was ever issued or turned over to the officer.

(D)     Not adopting and not enforcing a policy that no weapon be issued to or approved for use by an officer, unless the officer was assigned to a position for which the use of that weapon was appropriate.

(E)     Allowing Detective Moore to have and take possession of and keep the AR-15 assault rifle that had been turned over to the City of Harlingen Police Department by a concerned citizen **for destruction** so that it could never fall into the wrong hands and hurt someone.

(F)     Not disciplining Detective Moore for allowing his son, Ernest Moore, access to the AR-15 assault rifle, which Ernest Moore did use to kill and hurt others.

(G)     Not first training and requiring Detective Moore to demonstrate his proficiency in the use and safe storage of the AR-15 assault rifle before it was issued to Detective Moore;

(H)     Not resigning or removing himself from the position of Chief of Police before the incident.

**Defendant, City of Harlingen**

**39.**     Plaintiff hereinto incorporate by reference and repeat all allegations contained in

12

paragraphs 1 through 36 hereof.

**40.** Before July 7, 1998, serious deficiencies in the operation of the City of Harlingen Police Department under Chief of Police Jim Sheopner were reported to, and came to the attention of, the City of Harlingen. The City of Harlingen further knew that Harlingen Chief of Police Jim Scheopner did not intend to – and before the incident did not – make any changes or efforts to materially improve the operation of the City of Harlingen Police Department. Before the incident, the City of Harlingen did not replace Jim Scheopner as Chief of Police with a competent and reliable Chief of Police.

**41.** In conjunction with all of the foregoing and otherwise and with an intentional, a deliberate, or a conscious indifference to the lives and safety of citizens, including your decedent, Susan Lynn Rodriguez, and your plaintiffs, the City of Harlingen adopted or maintained, though its final policymakers, unconstitutional policies and customs, and failed to implement constitutional and proper polices and procedures, which proximately caused or resulted in the violation of the constitutional rights of Susan Lynn Rodriguez and plaintiffs secured to them under the Constitution and laws of the United States of America and in injuries to and the death of your decedent, Susan Lynn Rodriguez, and in all resulting damages to her and your plaintiffs, by, among other things, the following additional things:

(A) Issuing, authorizing, approving, and ratifying the issuance of the AR-15 assault rifle to Detective Moore, who, before the issuance to him of that weapon and who before the incident was not first trained on the use of the weapon, who had not demonstrated his proficiency on the weapon, who performed no duties for which the weapon would be or was appropriate, and who was not trained in the safe storage of the weapon away from dangerous persons who might have access to the weapon.

(B) Not enforcing the condition, representation or agreement regarding the

13

CIMPDF - www.faxita.com -

storage by Detective Moore of that AR-15 assault rifle in the unit assigned to Detective Moore and away from other persons before the incident.

(C)     Not adopting and enforcing policies before the incident which required that every officer first be trained in the proper use and storage of every weapon and first demonstrate his proficiency in every weapon before it was issued to the officer, including Detective Moore.

(D)     Not adopting and enforcing a policy before the incident that no weapon be issued to or approved for use by an officer, including Detective Moore, unless the officer, including Detective Moore, was then assigned to a position for which the use of that weapon was appropriate.

(E)     Not disciplining an officer, including Detective Moore, who either violated the rights of another that are secured by the Constitution and laws of the United States or of the State of Texas or who made or allowed an unsafe use of a weapon or who allowed access to a weapon by someone other than the officer to whom it was issued and for whose sole possession and use it was approved.

(F)     Allowing Jim Scheopner to serve as Chief of Police for the City of Harlingen after his lack of competence and reliability to serve had come to the attention of the final policymakers having the power to remove or recommend removal of him from his position as Chief of Police.

(G)     Not first training and requiring Detective Moore to demonstrate his proficiency in the proper use and safe storage of the AR-15 assault rifle before it was issued to Detective Moore.

**42.**     The facts stated above through paragraphs 39 clearly constitute intentional, deliberate, or conscious indifferences to well-known standards in the management of a municipal police department in the disposal of, training on, demonstrated proficiency in,

14

and the safe storage of weapons, which, among things and along with all other allegations set forth above, proximately caused the shooting death of Susan Lynn Rodriguez. Plaintiffs state that the unlawful taking of the life of their beloved Susan Lynn Rodriguez violates the Fourth Amendment to the United States Constitution made applicable to Defendants by the Fourteenth Amendment to the United States Constitution, for which redress is provided by 42 U.S.C.§1983 and for which Defendants are liable.

## VII.  Pendant Claims Under Texas Law
### Statement of Liability

**43.**    Plaintiffs hereunto incorporate by reference and repeat the allegations of paragraphs 1 through 41 of this Plaintiff's First Amended Complaint.

**44.**    The City of Harlingen in liable to Plaintiffs under §101.021 of The Texas Civil Practice and Remedies Code (The Texas Tort Claims Act) because of the negligent and other wrongful uses by Detective Moore, Chief of Police Jim Scheopner, and other personnel of the City of Harlingen of the AR-15 assault rifle as tangible personal property, which, singularly or in any combination with one another, proximately caused and resulted in injuries to, and the death of, Susan Lynn Rodriguez and in all resulting damages to Plaintiffs, which acts and omissions included, among other things:

    A.    Physically delivering the weapon to Detective Moore before the incident, rather than destroying it;

    B.    Physically delivering the weapon to Detective Moore when it was not then or before the incident appropriate to his duties;

    C.    Physically delivering the weapon to Detective Moore without first requiring him to be trained and to demonstrate his proficiency in its proper use and safe storage;

    D.    Physically storing the assault rifle in a gun case where it was accessible to

someone other than Detective Moore, rather than in the patrol unit assigned to Detective Moore, where it would have been accessible only to Detective Moore;

E.    Physically storing the assault rifle in an operable or serviceable condition ready for use, while it was accessible to someone other than Detective Moore (including Ernest Moore), rather than first rendering it inoperable and unusable to anyone other than Detective Moore;

F.    Detective Moore using a telephone at his residence before the incident other than to warn law enforcement officers enroute to the scene, or to cause the same to be done, of the serious and substantial risk posed to the lives and safety of law enforcement officers including, but not limited to, Agent Susan Lynn Rodriguez, by Ernest Moore.

G.    The negligent implementation by Harlingen Chief of Police Jim Scheopner, Detective Moore and other personnel of the City of Harlingen of any policies that resulted in or contributed to or proximately caused the death of Susan Lynn Rodriguez, including, but not limited to, a policy of not implementing or enforcing policies, procedures and regulations concerning the disposition and issuance of weapons.

**45.**    The City of Harlingen is further liable to Plaintiffs because of the operable and usable condition of the weapon and the maintenance of the weapon in an operable and usable condition before the incident, that allowed its use by one to whom it was not assigned, Ernest Moore, to kill two Border Patrol Agents including Susan Lynn Rodriguez, on July 7, 1998.

**46.**    Under the circumstances above described through paragraph 43, Chief of Police Jim Schoepner was guilty of various acts and omissions of negligence that proximately caused and resulted in the death of Susan Lynn Rodriguez, when such acts and omissions

16

were ones which <u>no</u> similarly situated chief of police could have believed were proper under the circumstances. These acts and omissions included, among others:

A.  Not ordering the destruction of the weapon <u>before</u> it was delivered to Detective Moore;

B.  Not ordering the destruction of the weapon <u>before</u> the incident;

C.  Allowing the weapon to be transferred or delivered or ratifying its transfer to Detective Moore;

D.  Not requiring Detective Moore to return the weapon to the City of Harlingen Police Department <u>before</u> the incident;

E.  Not adopting and not enforcing policies of the City of Harlingen Police Department concerning the destruction, issuance, possession, custody and safe storing away from persons other than ones to whom they were assigned of weapons <u>before</u> the incident;

F.  Not adopting and enforcing a policy before the incident that no weapon be issued to or approved for use by an officer, including Detective Moore, unless the officer, including Detective Moore, was then assigned to a position for which the use of that weapon was appropriate.

G.  Not requiring Detective Moore to be trained on the proper use and safe storage of and to demonstrate his proficient use of, the AR-15 assault rifle at any time before the incident;

H.  Not resigning or removing himself as Chief of Police before the incident.

47.  In conjunction with all of the foregoing and otherwise, Detective Moore was guilty of each and all of the following additional acts and omissions of negligence that proximately caused injuries to and the death of Susan Lynn Rodriguez and all resulting damages to her and to Plaintiffs:

A.  Not destroying the AR-15 assault weapon before the incident;

17

B.     Taking posssession of and keeping the AR-15 assault rifle before being trained on its proper and safe used and storage, before demonstrating a proficient use of that weapon;

C.     Not returning the AR-15 assault rifle to the Harlingen Police Department before the incident;

D.     Accepting and possessing the assault rifle at all;

E.     Failing to store the weapon in the trunk of his assigned unit away from access to it by others;

F.     Storing the weapon in a gun case at his home, where it was accessible to Ernest Moore;

G.     Storing the weapon in a gun case at his home, where Ernest Moore lived, in an operable and serviceable condition ready for use while it was accessible to and usable by Ernest Moore, who, in fact, accessed and used the weapon to kill two United States Border Patrol Agents including Susan Lynn Rodriguez, and to shoot and kill another law enforcement officer;

H.     Failing to warn – and failing to cause anyone else to warn – law enforcement officers en route to and at the scene of the incident of the serious and substantial risks to the lives and safety of law enforcement posed by Ernest Moore on July 7, 1998, prior to the killings at the scene.

**48.**     No municipality chief of police, detective, or other similarly-situated law enforcement official or officer above mentioned could reasonably have believed that his conduct, on these various occasions above, was proper, under the circumstances.

## VII.  DAMAGES

**49.**     As a proximate result of the incident, Susan Lynn Rodriguez sustained severe bodily injuries, consisting of bullet wounds to the leg and neck.  After her injuries, Susan

18

Lynn Rodriguez talked to other law enforcement officers and suffered conscious pain and suffering. Susan Lynn Rodriguez died on July 7, 1998.

50.     By reason of all of the above and foregoing, Susan Lynn Rodriguez has been damaged in an amount in excess of the minimum jurisdictional limits of the Court for which her surviving beneficiaries now sue.

51.     Susan Lynn Rodriguez died on July 7, 1998, as a proximate result of the incident in question and the injuries inflicted upon her by the negligence and carelessness of the Defendants, as described above.

52.     Defendants' acts and omissions, as set out above, were proximate causes of Plaintiffs' Gilberto M. Rodriguez and  Megan Suzanne Rodriguez damages, including loss of love, loss of companionship, advice, comfort, support both emotional and financial and mental anguish as a result of the death of Gilberto's wife and Megan's mother, Susan Lynn Rodriguez.

53.     Defendants' acts and omissions, as set out above, are proximate causes of Plaintiffs' Stephen L. Williams and Wife, Robyn S. Williams damages, including loss of love, loss of companionship, advice, comfort, support, both emotional and financial and mental anguish as result of the death of their daughter, Susan Lynn Rodriguez.

54.     Susan Lynn Rodriguez was twenty-eight years of age at the time of her death. She was in good health, with a reasonable life expectancy of 51.3 years.  She was earning a salary in excess of $50,000  annually.  Decedent had a reasonable work life expectancy of 26.5 years.  (Each life expectancy listed according to United States Department of Labor  Bureau of Statistics.)

55.     Susan Lynn Rodriguez was married to Plaintiff Gilberto M. Rodriguez, on March 18, 1995.  Of their marriage one (1) child was born, Megan Suzanne Rodriguez (Minor), born June 10, 1996, being those named herein and joined as Plaintiffs.  During her lifetime, Decedent was industrious and energetic, a good mother, wife and provider.  She

19

performed numerous and usual tasks in and about the family residence, and gave advice, counsel, comfort, care and protection to her husband and family. In all reasonable probability, she would have continued to do so, providing for and supporting her husband for the remainder of her natural life and caring for and supporting her child at least until she attained adulthood, and probably thereafter, as she planned to provide with the costs incident to attending college in accordance with her daughters desires and goals in life. At her death, Decedent possessed assets and accumulated savings from past earnings, which, in all reasonable probability, she would have continued to accumulate for the remainder of her life. At the time of Decedent's death, Plaintiff Gilberto M. Rodriguez was 32 years of age, in good health, with a reasonable life expectancy of 40.9 years.

56.    As a result of the untimely death of Decedent, Gilberto M. Rodriguez, Decedent's husband, has suffered pecuniary loss from the death of his wife, Susan Lynn Rodriguez, including losses of care, maintenance support, services, advice, counsel and contributions of a pecuniary value that she would, in all reasonable probability, have received from his wife during his lifetime, had she lived. In addition, he has suffered loss of consortium and damage to the husband-wife relationship, including loss of affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love and felicity necessary to a successful marriage. He has suffered mental anguish, grief and sorrow as a result of the death of his wife, Susan Lynn Rodriguez, and is likely to continue to suffer for a long time into the future. For these losses, Gilberto M. Rodriguez seeks damages in a sum in excess of the jurisdictional limits of the court.

57.    Megan Suzanne Rodriguez, (Minor) has suffered pecuniary losses from the death of her Mother, Susan Lynn Rodriguez, including losses of care, maintenance, support, services, advice, counsel and contributions of a pecuniary value that she would, in all reasonable probability, have received from her Mother during her lifetime, had she lived. She has suffered additional losses by virtue of the destruction of the parent-child

20

relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness. She has suffered severe mental depression and anguish, grief and sorrow as a result of the death of her Mother Susan Lynn Rodriguez and is likely to continue to suffer for a long time in the future. For these losses, Megan Suzanne Rodriguez, seeks damages in a sum in excess of the jurisdictional limits of the court.

**58.**　　Megan Suzanne Rodriguez has suffered a loss of inheritance that, in all reasonable probability, Decedent would have left to her by will or inheritance. For these losses, Megan Suzanne Rodriguez seeks damages in a sum in excess of the jurisdictional limits of the court.

**59.**　　Decedent provided her Father, Stephen L. Williams, Plaintiff, with care, attention and counsel in his day-to-day affairs. In all reasonable probability, Decedent would have continued to so provide for her Father including financial support in his old age, until his death. Plaintiff, Stephen L. Williams, was 55 years of age at the time of Decedent's death, and has a reasonable life expectancy of 21.1 years.

**60.**　　In addition, Decedent provided her Mother, Robyn S. Williams, Plaintiff, with care, attention and counsel in her day-to-day affairs. In all reasonable probability, Decedent would have continued to so provide for her mother including financial support in her old age, until her death. Plaintiff, Robyn S. Williams, was 52 years of age at the time of Decedent's death, and has a reasonable life expectancy of 29 years.

**61.**　　All Individual defendants are sued in their individual capacities and in their official capacities as officers and employees of the City of Harlingen, Texas.

## VIII. EXEMPLARY DAMAGES

**62.**　　The acts and omissions giving rise to the claims above stated were comitted with that amount of conscious indifference which shows or tends to show malice or ill intent on the part of the above-identified or referenced officers and employees of the City of

Harlingen. Such conduct on the part of each of the above-identified or referenced officers and employees of the City of Harlingen was intentional, willful, or grossly negligent conduct which shows an entire want of care to the rights of your decedent and Plaintiffs. The acts and omissions of the above-identified and referenced officers and employees of the City of Harlingen were bona fide in pursuance of the general authority to act for the City of Harlingen on the subjects or matter to which they relate. Therefore, all defendants are liable to Plaintiffs for exemplary damages in an amount to be determined by this Horonable Court and the jury.

## IX. PRAYER

63.    WHEREFORE Plaintiffs pray that this Honorable Court:

    A.    Enter judgment against Defendants, jointly and severally, on behalf of Plaintiffs for compensatory damages in the amount of five million dollars;

    B.    Enter judgment against Defendants, jointly and severally, on behalf of Plaintiffs for damages on Plaintiffs Wrongful Death Claim and Survival in the amount of five million dollars.

    C.    Grant a trial by jury on all issues so triable; and

    D.    Grant Plaintiffs any and all additional relief to which they may appear to be entitled including statutory attorney fees, pre-judgment interest, and their costs herein expended.

    E.    Enter judgment for Plaintiffs and against all defendants, jointly and severally, for exemplary damages in an amount to be determined by this Honorable Court and the jury.

Respectfully submitted,

**BROADUS A. SPIVEY**
**SPIVEY & AINSWORTH, PC.**
**48 East Avenue**
**Austin, TX  78701**

512/474-6061
512/474-1605 (fax)

Mr. Michael Greenberg
Mr. Richard Pena
Law Offices of Richard Pena, P.C.
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, Texas 7746-5747

By _____
        Broadus A. Spivey
        State Bar No. 18955000

**ATTORNEYS FOR PLAINTIFFS**

23

3163P.003

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing document was

forwarded on March 11, 1999, to the following counsel of record and interested parties:

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
2424 North 10th St, Suite 201
McAllen, Texas 78501
Attorneys for Defendant
CMRRR# Z 438447820

Mr. Tom Lockhart
Mr. Jim Denison
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
Attorneys for Defendant
CMRRR# Z 438447821

Mr. Michael Greenberg
Mr. Richard Pena
LAW OFFICES OF RICHARD PENA, P.C.
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, Texas 7746-5747
Via Regular Mail

_____
Broadus A. Spivey

24