23

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 6 1999

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ARTURO GUILLERMO SALINAS §<br>AND ELISA HERNANDEZ HERRERA §<br>SALINAS §<br>V. §<br>CITY OF HARLINGEN, TEXAS, §<br>R.D. MOORE AND §<br>JIM SHEOPNER § | CIVIL ACTION NO. B-98-162 |

AND

| | |
|---|---|
| GILBERTO M. RODRIGUEZ, §<br>INDIVIDUALLY AND ON BEHALF OF §<br>HIS MINOR DAUGHTER, MEGAN §<br>SUZANNE RODRIGUEZ, AND §<br>STEPHEN L. WILLIAMS AND WIFE, §<br>ROBYN S. WILLIAMS, SURVIVING §<br>BENEFICIARIES OF THE DECEASED §<br>V. §<br>CITY OF HARLINGEN, TEXAS §<br>AND §<br>R.D. MOORE AND §<br>JIM SHEOPNER § | CIVIL ACTION NO. B-98-163 |

## PLAINTIFFS' RESPONSE TO DEFENDENTS' MOTION TO DISMISS
## AND SUPPORTING BRIEF

Respectfully Submitted,

BROADUS A. SPIVEY
SBOT No. 18955000
SPIVEY & AINSWORTH, P.C.
48 East Avenue
Austin, TX 78701
512/474-6061
512/474-1605(fax)

Michael Greenberg
Texas Bar No. 08388000
Law Offices of Richard Pena
Barton Oaks Plaza
901 Mopac, Suite 325
Austin, TX 78746

ATTORNEYS FOR PLAINTIFFS

# **Table of Contents**

Page

Table of Contents…………………………………………………………… ii

Table of Citations…………………………………………………………… iii

Plaintiffs' Response to Defendants' Motion to Dismiss………………………… 1

I.   Statement of the Nature and Stage of the Proceedings……………….……… 2

II.  Issues Before the Court …………..……………...….…………………… 2

III. Plaintiff Has Adequately Pled Its Claims…………………………….….... 4

     A.   The Complaint Sufficiently Allege §1983 Causes of Action…..……… 4

     B.   Facts Alleged That Satisfy §1983 Causes of Action………...….…… 7

IV.  Response to Defendants Enumerated Arguments…………………………… 9

     A.   Excessive Force Claim …………………………….………………… 9

     B.   Due Process Claim Under the Fourteenth Amendment……………… 10

     C.   Official Policy Proximately Caused the Incident…………………… 12

     D.   State Law Claims……………………………………….…………….. 13

     E.   Immunity…..……………………………………………………… 14

V.   Conclusion ………………………………………………………… 15

VI.  Certificate of Service ……..……………………………………………... 17

CVMPDF - www.texisi.com

# Table of Citations

**FEDERAL CASES**

*Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)--------------------------------- 14

*Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381 (5th Cir. 1985.)---------------------------------------------- 3

*Bowers v. Devito*, 686 F.2d 616 (7th Cir. 1982)------------------------------------------------------------------- 6

*Conley v. Gibson*, 355 U.S. 41 (1957) --------------------------------------------------------------------------------- 4

*Cornelius v. Town of Highland Lake, Alabama* 880 F.2d 348 (11th Cir. 1989)-------------------------------- 5, 6

*Crowe v. Henry*, 43 F.3d 198 (5th Cir. 1995)------------------------------------------------------------------------- 4

*DeShaney v. Winnebago County, Wi.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)-------------- 5, 6

*Doe v. Hillsboro Independent School District*, 113 F. 3d 1412 (5th Cir. 1997)(en banc)-------------------- 6, 7

*Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)----------------------------------------------------- 12, 13

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)-------------------------------- 14

*John Doe v. Hillsboro I.S.D.*, 81 F.3d 1395 (5th Cir. 1996) ------------------------------------------------------ 4, 5

*Johnson v. Dallas, I.S.D.*, 38 F.3d 198 (5th Cir. 1994) ------------------------------------------------------------ 10

*Jones v. Phyfer*, 761 F.2d 642 (11th Cir. 1985)---------------------------------------------------------------------- 6

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982), cert.
    denied. 459 U.S. 1105 (1983) ------------------------------------------------------------------------------------ 3

*Leffall v. Dallas Independent School District*, 28 F.3d 512 (5th Cir. 1994) ---------------------------------- 4, 6

*Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) -------------------------------------- 15

*Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)-------------------------------- 6

*Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ---------------------------------- 14

*Pembaur. v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ------------------- 12, 13

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998.)----------------------------------------------------------------------- 15, 17

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995)(en banc) ------------------------------------------------------- 4

*Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)------------------------------------- 15

*Turner v. Upton County, Texas*, 915 F.2d 133 (5th Cir., 1990) ------------------------------------------------- 12, 13

*Wideman v. Shallowford Community Hospital, Inc.*, 826 F.2d 1030 (11th Cir. 1987) --------------------- 7, 10

*Wright v. City of Ozark*, 715 F.2d 1513 (11th Cir. 1983) ---------------------------------------------------------- 6

**STATE CASES**

*Kennedy v. Baird*, 682 S.W.2d 377 (Tex. App.-El Paso 1984, no writ) ---------------------------------------- 14

*Praether v. Brandt*, 1998 WL 754644,  (Tex.App.-Houston [1st Dist.] 1998, no petn.)-----------------------14

**FEDERAL STATUTES**

42 U.S.C. § 1983 ---------------------------------------------------------------------------------------------- 2, 4,  8

Federal Rule of Civil Procedure 12(b)(6) ------------------------------------------------------------------------2, 3

Federal Rule of Civil Procedure 8(a)(2) --------------------------------------------------------------------------- 4

CMPDF - www.fasiio.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 6 1999

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ARTURO GUILLERMO SALINAS | § | |
| AND ELISA HERNANDEZ HERRERA | § | |
| SALINAS | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| CITY OF HARLINGEN, TEXAS, | § | |
| R.D. MOORE AND | § | |
| JIM SHEOPNER | § | |

AND

| | | |
|---|---|---|
| GILBERTO M. RODRIGUEZ, | § | |
| INDIVIDUALLY AND ON BEHALF OF | § | |
| HIS MINOR DAUGHTER, MEGAN | § | |
| SUZANNE RODRIGUEZ, AND | § | |
| STEPHEN L. WILLIAMS AND WIFE, | § | |
| ROBYN S. WILLIAMS, SURVIVING | § | |
| BENEFICIARIES OF THE DECEASED | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-98-163 |
| | § | |
| CITY OF HARLINGEN, TEXAS | § | |
| AND | § | |
| R.D. MOORE AND | § | |
| JIM SHEOPNER | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS AND SUPPORTING BRIEF

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiffs, as suggested in the hearing held in this matter on March 17, 1999, file this

RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS UNDER FRCP 12(b)(6) in each of

the above-referenced cases.

## I. Nature and Stage of the Proceeding

Plaintiffs Salinas and Rodriguez, et al. brought suit pursuant to 42 USC §1983 and the Texas Tort Claims Act (TEX. CIV. PRAC. & REM. CODE ANN., Chap. 101). A concerned citizen delivered to the City of Harlingen Police Department an AR-15 assault rifle and specifically requested that it be destroyed. Detective R.D. Moore took possession of that assault rifle for the City of Harlingen assuring the citizen that it would be destroyed. It was not.

Defendants' issuance of that AR-15 assault rifle, their improper use and storage of that weapon pursuant to municipal policy, and their individual acts endangered United States Border Patrol Agents Salinas and Rodriguez. The Defendants' acts resulted in Ernest Moore, son of Defendant Detective R.D. Moore, having access to and use of that AR-15, while Moore was fleeing from the law after committing another double homicide with another assault rifle (which was wrested from him at the scene of that double homicide) earlier that very same morning, all of which caused the shooting death of the Plaintiff, United States Border Patrol Agents. That AR-15 is a military assault rifle, which carries a high capacity of ammunition and fires ultra high velocity anti-personnel ammunition.

Defendants filed a Motion to Dismiss under FED. R. CIV. P. 12(b)(6), a companion motion based on qualified immunity, and supplements. This Honorable Court granted Plaintiffs leave to admit new lead counsel and leave to file Plaintiffs' First Amended Complaint (hereinafter "Amended Complaint"), which Defendants moved to dismiss. Plaintiffs' Amended Complaint clearly states viable causes of action pursuant to the Due Process Clause of the Fourteenth Amendment and Texas state law while clarifying that Plaintiffs are not asserting any Eighth Amendment excessive force claims. (*See* ¶ IV., A. of this Response and Brief.)

## II. Issues Before The Court

CHPDF - www.hcirio.com

1.  Whether Plaintiffs have properly pled a violation of a right secured by the Constitution or laws of the United States of America.

2.  Whether Plaintiffs have properly pled that the violation of that right was proximately caused by a person acting under color of law.

3.  Whether Plaintiffs have properly pled that the violation of constitutional rights by the City of Harlingen resulted from municipal custom or policy.

4.  Whether Defendants Detective R.D. Moore and Chief of Police Jim Scheopner are shielded from liability under the doctrine of qualified immunity.

5.  Whether Plaintiffs have properly pled negligence liability under Texas state tort law.

### III.  Standard of Review

Defendants' motion to dismiss Plaintiffs' cases fail to cite key authorities, and it misinterprets well-established principles of law.  It also fails to address many allegations and claims in the Amended Complaint.  Based on the specific allegations in the Amended Complaint, which must be taken as true and which must be construed in a light most favorable to Plaintiffs, Plaintiffs have alleged facts sufficient to state proper claims under federal and state law.

Under FED. R. CIV. P. 12(b)(6), Defendants, as movants, bear the burden of demonstrating that Plaintiffs' First Amended Complaint fails to state a proper claim.  2A *Moore's Federal Practice,* ¶ 12.07, at p.12-63.  "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied. 459 U.S. 1105 (1983) (citation omitted).  *See also Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 386 (5th Cir. 1985.)  The issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.  Accordingly, a court must not dismiss a complaint, unless

it appears beyond doubt that the plaintiff can prove **no** set of facts in support his claims that would entitle him to relief. *Leffall v. Dallas Independent School District*, 28 F.3d 512, 524 (5th Cir. 1994). (Emphasis added).

In evaluating Defendants' motion, the court must construe the complaint liberally, accept the facts as alleged, and resolve any doubts in favor of the plaintiffs. *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). The complaint need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995)(en banc). A court may not grant a motion to dismiss, "unless it appears beyond a doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief ..." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); and *Leffall v. Dallas I.S.D.*, Id., at 524. Even a cursory reading of Plaintiffs' Amended complaints reveal that they satisfy the notice pleading requirements of the Federal Rules and contains allegations that, if accepted as true, would entitle Plaintiffs to relief.

### III. Plaintiffs Have Properly Pleaded Their Claims

**A.      The Complaints Sufficiently Allege §1983 Causes of Action – The Law**

The Amended Complaints allege a deprivation of the right to life guaranteed by the Due Process Clause of the Fourteenth Amendment in violation of 42 U.S.C. §1983. To establish a claim under §1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of law." *John Doe v. Hillsboro I.S.D.*, 81 F.3d 1395, 1402 (*citing Leffall*, 28 F.2d at 525).

The Amended complaints allege the violation of Agent Ricardo Salinas' and Agent Susan Lynn Rodriguez' Fourteenth Amendment protection against deprivation of life without due

process of law. See Salinas Complaint at ¶¶ 1, 40. The Complaints also allege that Detective

R.D. Moore's, Police Chief Jim Scheopner's, and the City of Harlingen's actions and Harlingen

Police Department policies, established by Chief Scheopner, proximately caused that violation of

Border Patrol Agents Salinas' and Rodriguez' right to life. Id. at ¶ 35-41.

Plaintiffs allege facts evidencing Defendants' culpable conduct that proximately caused

and was the force that gave rise to the actions of Ernest Moore and the death of Agents Salinas

and Rodriguez. Id. The peculiar, aggravated facts of this case trigger well established

exceptions to the general principle that §1983 does not recognize third-party liability under the

color of law. *DeShaney v. Winnebago County, Wi.*, 489 U.S. 189, 109 S.Ct. 998 (1989). Third-

party actors do not generally act under color of law, giving rise to §1983 liability.

The Amended Complaints allege facts sufficient to warrant the application of the special

relationship exception to *DeShaney*, the special danger exception to *DeShaney*, and the state-

created danger exception. *Doe v. Hillsboro Independent School District*, 81 F.3d 1395 (5th Cir.

1996) (special relationship and state-created danger exceptions explained and applied, not

adopted based on factual insufficiencies of case); Cornelius v. Town of Highland Lake, Alabama

880 F.2d 348 (11th Cir. 1989). (Special relationship and special danger exceptions explained.)

Plaintiffs have asserted facts sufficient for a finding of liability within the well-

established exceptions clothing third-party actors with liability under color of law. Complaint at

¶¶ 36,38,40,41. Defendants have not correctly analyzed the court opinions and tests of

application that they did cite. Defendants have recharacterized these doctrines as something they

are not and have "adapted" the doctrine of "state-created danger" to reach an ill-founded

conclusion of no action under color of law.

There is a clear delineation between separate, well-established, and accepted theories of §1983 liability based on the actions of third parties. The Fifth Circuit specified such distinctions and considered and applied those theories separately in *Doe v. Hillsboro Independent School District.* Id., 113 F. 3d 1412, 1414 (5th Cir. 1997)(en banc).

The "special relationship" exception to non-liability arises from *DeShaney v. Winnebago County*, and its progeny. Our courts have adopted the special relationship analysis to access liability in instances when the state should become responsible for the actions of third parties. This analysis is applied where a special relationship exists between the victim and the third party or between the victim and the government officials. *See Wright v. City of Ozark*, 715 F.2d 1513 (11th Cir. 1983).

The Fifth Circuit's application of the "special relationship" doctrine attaches when the state knew that the victim, as distinguished from the public at large, faced a danger because of that relationship. Specifically, the law looks to whether there is reason for a duty to exist that extends to particular individuals (Agents Salinas and Rodriguez in this case) where there might be no extending duty to the general public. *See DeShaney*; *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553 (1980); *Doe v. Hillsboro*, 113 F. 3d 1412, 1414 (5th Cir. 1997)(en banc).; *Leffall v. Dallas I.S.D.*, 28 F.3d 512, 524 (5th Cir. 1994); *Cornelius v. Town of Highland Lake, Al.* 880 F.2d 348, 353 (11thCir. 1989).

In addition to the special-relationship analysis, a duty may exist on the state's part under § 1983 when the state was aware that the plaintiff faced a special danger that the general public did not face. *Bowers v. Devito*, 686 F.2d 616, 618 (7th Cir, 1982); *Jones v. Phyfer*, 761 f.2d 642 (11th Cir. 1985); *Cornelius v. Town of Highland Lake, Al.*, 880 F.2d 348, 353(11th Cir. 1989). Judge Posner, two years after writing the initial Seventh Circuit opinion for *DeShaney*, revisited

the idea of third party actors clothed in the color of law, holding, **"[i]f the state puts a man in a position of danger and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit."** *Bowers* at 618.

The Fifth Circuit has repeatedly discussed the third-party exception, based on a state-created danger, though it has never sustained liability based on the "state-created danger" exception. But, because of each prior case's own factual deficiencies. *Doe v. Hillsboro I.S.D., ,* 113 F. 3d 1412, 1414 (5th Cir. 1997)(en banc).

As Fifth Circuit Judge Edith Jones observed, "The key to the state-created danger cases lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." (quoting *Wideman v. Shallowford Community Hospital, Inc.,* 826 F.2d 1030, 1035 (11th Cir. 1987). Judge Jones continued, "Thus, the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable they must have used their authority to create an opportunity that would not otherwise have existed for the third-party's crime to occur." The Fifth Circuit has applied the "state-created danger" doctrine and has "assumed arguendo that it recognizes the claim," but in *Leffall* and in subsequent cases quoting *Leffall* it simply found that the facts of those cases did not to fall within the "state-created danger" exception. *Doe v. Hillsboro I.S.D.,* Id. at 1414; See *Johnson v. Dallas, I.S.D.,*38 F.3d 198.

## B.   The Facts Alleged In the First Amended Complaint In Support That Satisfy 1983 Causes Of Action

Certain facts alleged in Plaintiffs' First Amended Complaints support causes of action under §1983 within the exceptions described in *DeShaney*. In addition to the allegations of a

factual nature which are set forth in Paragraphs 13 though 33 (pages 5 to 9), 35 (page 9), 36 (pages 9 and 10), 38 (pages 10 through 12), and 40 (page 12), 41 (pages 12 to 14, and 40 (page 14) of the complaints, the following specific facts regarding the special relationship and the state-created danger exceptions establish the liability of each Defendant under 42 USC §1983:

- Defendants all *knew* the AR-15 semi-automatic assault rifle was turned in to the Harlingen Police Department for only one purpose: **to be destroyed**.

- Defendants all *knew* that it was a dangerous weapon.

- Defendants all *knew* that it was not destroyed (as was required by state administrative laws), but was transferred to Detective Moore, at his request, even though:

  - Detective Moore was not trained in its use.

  - Detective Moore did not demonstrate his proficiency in its use and operation.

  - Detective Moore was supposed to, but did not, keep the assault rifle in his police unit. Instead, he kept it in his residence, where his son, Ernest Moore, lived and had access to the weapon.

- The City of Harlingen issued the AR-15 semi-automatic assault rifle, to Detective Moore, in accordance the city's Police Department policy, without training, contrary to state administrative laws for issuing firearms.

- On the morning of July 7, 1998, Defendants all *knew* that Ernest Moore was the suspect in a double homicide in Rio Hondo that lead law enforcement directly to the residence of Detective Moore, where Ernest Moore lived, in search of Ernest Moore.

- Detective Moore and Defendants *knew* that Moore's son was nearby; that his son was in serious trouble; that the AR-15 semi-automatic assault rifle entrusted to Detective Moore was missing and in all reasonable probability was in the possession of his son; and that

Ernest Moore was proficient with that rifle – all before Border Patrol Agents Salinas and Rodriguez arrived at the scene.

• Nevertheless, Defendants did absolutely nothing to warn law enforcement officers, including Border Patrol Agents Salinas and Rodriguez, of the missing weapon that disappeared along with Ernest Moore.

• Defendants all *knew* of the dangerous position into which their actions placed officers, but the Defendants did nothing to warn or protect them from this specific danger which they created for these two officers, and which proximately caused the deaths of two U.S. Border Patrol Agents and the serious wounding of a deputy sheriff.

• These Decedents held a special relationship with Ernest Moore because they intended to confront, apprehend, and arrest Ernest Moore for the Rio Hondo shooting massacre. This relationship was one of direct confrontation and was unique, distinct from the public at large.

• These officers, who were duty bound to confront, apprehend, and arrest Ernest Moore, faced special danger because Detective R.D. Moore permitted Ernest Moore, access to the Harlingen owned AR-15 an armed, fugitive murderer faced with imminent arrest.

### IV. Response to Defendants Enumerated Arguments

Defendants raise the following five issues in their motion to dismiss: (A) excessive force; (B) Fourteenth Amendment due process liability; (C) causation; (D) qualified immunity; and (E) state law claims. None of these issues warrant dismissal of the Complaints.

### A.    Excessive Force Claim

Since Defendants' filing of their Motion to Dismiss, Plaintiffs, with leave of court, have amended their Complaint, and Plaintiffs are not presently asserting any cause of action for use of "excessive force" as predicated on the Eighth Amendment.

## B.   Due Process Claim Under the Fourteenth Amendment

Plaintiffs' Amended Complaints Petition allege and Plaintiffs have reviewed above the law necessary to maintain §1983 action based on the peculiar and aggravated facts of this case. Again, quoting Judge Jones, "When state actors knowingly place a person in danger, the due process clause of the constitution has been held to render them accountable for the foreseeable injuries that result from their conduct, whether or not the victim was in formal state custody. The key to the state-created danger cases lies in the state actors' culpable knowledge and conduct in 'affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, *or* cutting off potential sources of private aid.' " *Johnson v. Dallas I.S.D.*, 38 F.3d 198, (5th Cir. 1994) (quoting *Wideman v. Shallowford Community Hospital*, 826 F.2d 1030 (11th Cir. 1987.)

The Amended Complaint alleges actual knowledge of the risk of harm that the state did create. Detective Moore and the other Defendants had to know that his method of storing the AR-15 semi-automatic assault rifle allowed Ernest Moore to arm himself with the unusually dangerous weapon; that Ernest was in the vicinity of the Moore house; that Ernest posed a violent threat; that law enforcement officers were arriving at the scene and would attempt to apprehend the Ernest Moore; and that none of the Defendants warned the Plaintiffs other officers of those dangers. (Amended Complaint at ¶ 29.)

Knowing all of this, Detective Moore spoke telephonically with Police Chief Jim Scheopner, before the Plaintiffs and the other law enforcement officers arrived at the Moore

house, but Defendants warned none of the officers before or after they arrived at the scene that Ernest Moore had the City of Harlingen Ar-15 semi-automatic rifle. The Plaintiffs and other law enforcement officers faced special danger because of their special relationship to Ernest Moore. The Plaintiffs and the other law enforcement officers were intending to confront, apprehend, and arrest Ernest Moore for the Rio Hondo shooting. *Id.* at 30.

The Amended Complaints allege that the Defendants' deliberate indifference to the Plaintiffs' safety was a proximate cause of U.S. Border Patrol Agents Salinas' and Rodriguez', deaths. Amended Complaint at ¶¶ 36, 38, 41. Specifically, the amended complaints allege that Chief Jim Scheopner diverted that AR-15 assault rifle from its proper destruction and issued that AR-15 semi-automatic assault rifle to Detective R.D. Moore. Amended Complaint at ¶ 38(a).

The amended complaints also allege that Chief Scheopner, pursuant to his own policy, issued the assault rifle and permitted the use, storage, and possession of the assault rifle contrary to all state standards and protocols for firearms. Id. at ¶18. Further, the amended complaint alleges that Detective Moore stored the assault rifle in his cocaine-using, prozac-prescribed, unstable son's room and thereby permitting access to that weapon by Ernest Moore. Id. at ¶ 21-23.

The Amended Complaint alleges that Defendants knew Ernest was "...in deep shit..." after the Rio Hondo shooting, and that Ernest had re-armed himself with the AR-15, because Detective Moore had spoken to Ernest Moore and Detective Moore had spoken to Chief Scheopner. Id. at ¶ 29.

Additionally, Detective Moore then spoke with Chief Scheopner by telephone. Afterwards, the Plaintiffs and other law enforcement officers arrived at the Moore house but

were never warned by Detective Moore or Chief Scheopner that Ernest Moore was armed, in the vicinity, or, as known to them, posed a violent threat. Id. at ¶ 36(e).

Finally, the City of Harlingen never disciplined Chief Scheopner or Detective Moore for the any of the above conduct. *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir 1985).

In each of these alleged instances the Defendants' acted with deliberate indifference and these acts taken individually and as a whole, each and all, shock the conscience.

## C.    Official Policy Proximately Caused the Incident

Plaintiffs must prove injury from a city policy or custom in order to hold to the City of Harlingen liable. Two fact situations can lead to a municipality's liability under §1983 for the acts of its officials.

First, a municipality's final policymakers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees. *See Pembaur. v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). *Turner v. Upton County, Texas*, 915 F.2d 133, 136 (5th Cir. 1990). When an officer commits unconstitutional acts and is never disciplined, the municipality implicitly ratifies and adopts that unconstitutional conduct as official policy,  and municipal liability then results. *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir 1985). An injured plaintiff is not likely to document proof of policy or disposition, either of the policymaker or throughout the police force. *Id* at 171. The court must accept that the plaintiff may encounter difficulties in making that proof, because of the lack of credible witnesses and the avenues for dispute and distraction over the actual facts of each specific incident. Id. The disposition of the policymaker must be inferred circumstantially from conduct of the officer and the policymaker. Id. Following any catastrophic and incompetent performance, where there are no reprimands, no discharges, no

admissions of error, and no changes made in policy, the court and jury can accept that this is "the way things are done" in that municipality. Id. If prior policy had been violated, a court and jury could expect to see a different reaction; if officers' conduct is not acceptable to a police chief, a court and jury expects to see changes made. Id.

Second, the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved. *See Pembaur. v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292 (1986). *Turner v. Upton County, Texas*, 915 F.2d 133, 136 (5th Cir., 1990).

Plaintiffs' Amended Complaints specifically allege how the unconstitutional actions of the City of Harlingen's final policymakers, including Chief of Police Scheopner, were a proximate and producing cause of Agent Salinas' death. Amended Complaint at ¶¶ 39-43. Additionally, consistent with *Grandstaff v. Borger*, the Complaint alleges that the City of Harlingen ratified Detective R.D. Moore's conduct, as is evidenced by the city's failure to censure, discipline, or reprimand Detective Moore after he improperly received, possessed, and stored the AR-15 and after he failed to warn *fellow law officers* of a known, avoidable danger. Id.

## D.   State Law Claims

Plaintiffs clearly alleged acts of negligence in the use of tangible personal property by the City of Harlingen that proximately caused this incident. Proximate cause includes and embraces both foreseeability and cause in fact and does not have to be asserted more specifically. Defendants cannot challenge the application of §101.021 of the Texas Tort Claims Act to Harlingen's liability. Defendants do not question liability of Detective Moore or Chief Scheopner, under Texas state law. The only cases cited by the Defendants on this point do not

address a situation in which a municipality negligently fails to prevent a weapon from being taken from the municipality. *Kennedy v. Baird*, 682 S.W.2d 377, 388 (Tex. App.-El Paso 1984, no writ); *Praether v. Brandt*, 1998 WL 754644, *4 (Tex.App.-Houston [1st Dist.] 1998, no petn.).

## E.    Immunity

The immunity issue raised by this case is not one of sovereign immunity, but instead is one of qualified immunity. The doctrine of qualified immunity ordinarily shields a government official performing discretionary functions from liability for civil damages, provided his actions meet the test of "objective legal reasonableness." *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982). The court should assess the "objective reasonableness" of an officer's actions in light of legal rules that were "clearly established" at the time those actions were taken. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The court must take care to identify the relevant "clearly-established law" at the proper level of generality, so that the defense of qualified immunity will serve its intended purpose, i.e., to allow officers "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Anderson*, 483 U.S. at 639-40, 107 S.Ct. at 3038-39, quoting Davis v. Scherer (*citation omitted*). To that end, for a right to be "clearly established," its "contours ... must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. It is not necessary, however, that prior cases have held the particular action in question unlawful; "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id., citing *Mitchell*, 472 U.S. at 535 n. 12,

105 S.Ct. at 2820 n. 12 and *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1097-98, 89 L.Ed.2d 271 (1986). *Petta v. Rivera*, 143 F.3d 895, 900 (5th Cir. 1998.)

In *Siegert v. Gilley*, the Supreme Court clarified the "analytical structure" for addressing a claim of qualified immunity. 500 U.S. 226, 231- 32, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991). Once a defendant pleads a defense of qualified immunity, the trial judge must determine "whether the plaintiff has alleged a constitutional violation at all" under current law. Id. at 232. If the plaintiff has done so, the judge then determines whether the defendant's actions were "objectively reasonable" with reference to "clearly established law" at the time of the conduct in question. Id. at 231.

The amended complaints allege that the issuance of a weapon to an officer, specifically Detective R.D. Moore, who had no training, no proficiency, or instruction in the care and use of the gun (specifically not for an AR-15 assault rifle) directly violates a statewide standard long embodied in §211.104 of the Administrative Rules of the Texas Commission on Law Enforcement Officer Standards and Education. The amended complaints allege that the specific standard had been adopted by the Harlingen Police Department and published statewide since 1988. Amended Complaint, ¶ 16-20. Chief Scheopner, Plaintiffs allege, impliedly established policy, through repeated action, that training and profiency (mandated to prevent the types of harms that are the basis for this lawsuit) were not necessary in the Harlingen Police Department, despite Texas state standards to the contrary.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request this Court to deny Defendants Motions to Dismiss. Alternatively, if this Court should conclude that Plaintiffs' pleadings are deficient,

# CONCLUSION

WHEREFORE, Plaintiffs respectfully request this Court to deny Defendants Motions to Dismiss. Alternatively, if this Court should conclude that Plaintiffs' pleadings are deficient, Plaintiff requests leave to file a Second Amended Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

Respectfully submitted,

BROADUS A. SPIVEY
SPIVEY & AINSWORTH, PC.
48 East Avenue
Austin, TX 78701
512/474-6061
512/474-1605 (fax)

Mr. Michael Greenberg
Mr. Richard Pena
Law Offices of Richard Pena, P.C.
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, Texas 7746-5747

By _____

Broadus A. Spivey
State Bar No. 18955000

## ATTORNEYS FOR PLAINTIFFS

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing document was forwarded on March 26, 1999, to the following counsel of record and interested parties via facsimile and certified mail, return receipt requested:

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
2424 North 10th St, Suite 201
McAllen, Texas 78501
Attorneys for Defendant

Mr. Tom Lockhart
Mr. Jim Denison
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
Attorneys for Defendant

_____
Broadus A. Spivey
by permission