IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| GILBERTO M. RODRIGUEZ, Individually and on Behalf of his Minor Daughter, MEGAN SUZANNE RODRIGUEZ; and STEPHEN L. WILLIAMS and Wife, ROBYN S. WILLIAMS, Surviving Beneficiaries of the Deceased<br><br>V.<br><br>CITY OF HARLINGEN, TEXAS; R.D. MOORE and JIM SCHOEPNER | CIVIL ACTION NO. B-98-163 |

### DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants CITY OF HARLINGEN, TEXAS; R.D. MOORE and JIM SCHOEPNER, and file this their **DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO DISMISS** and would show the Court as follows:

### I. Summary of Argument

Plaintiffs' Response, p.2, concedes that they have no valid theory under the U.S. Constitution, 4th Amendment.[1/]

Plaintiffs claim they have a Substantive Due Process claim for failure to protect from criminal violence based on (1) a "special relation" between Defendants and the deceased; and (2) the "state-created danger" doctrine. Because Agent Rodriguez was not involuntarily confined

---

[1/] Their Response, ¶ I, mistakenly refers to it as an "Eighth Amendment" claim.

by Defendants at the time of the shooting, there is no "special relation." *Walton v. Alexander*, 44 F.3d 1297, 1299 (5th Cir. 1995) (*en banc*) *Doe v. Hillsboro ISD*, 113 F.3d 1412, 1415 (5th Cir. 1997) (*en banc*).

The "state-created danger" theory first fails because no Fifth Circuit decision has ever adopted it as an exception to *DeShaney*. Moreover, the Fifth Circuit has stated that if "state-created danger" were recognized as a viable exception it would apply only if: (1) the state creates an opportunity that would not otherwise exist for a third party to commit the crime; and (2) the state forces the plaintiff in the position of harm that strips the plaintiff of the ability of retreat or self defense. *Doe*, 113 F.3d at 1415; *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997) *cert. denied* ____ U.S. ____, 119 S.Ct. 65 (1998); *Salas v. Carpenter*, 980 F.2d 299, 306-09 (5th Cir. 1992). The alleged events show that Plaintiffs did not create such an opportunity, nor was Agent Rodriguez forced into it without means of retreat or escape.

Plaintiffs' sole argument to defeat Defendants Schoepner and Moore's qualified immunity is they violated state law. The *proper* test is whether they violated a *federal* right clearly established in July 1998. They cite no case in the Southern District of Texas or the Fifth Circuit that establishes their alleged rights, much less clearly so.

II. <u>Plaintiffs' Substantive Due Process Claims</u>

A. Amended Complaint Defeats Any Due
   <u>Process Duty Based on "Special Relationship"</u>

In *DeShaney*, the state social service agency had taken temporary custody of the deceased boy, Joshua, before returning him to the father that then physically abused him. *DeShaney v. Winnebago Co. Dept. of Soc. Serv.*, 489 U.S. 189, 109 S.Ct. 998 (1989). The Supreme Court

rejected DeShaney's "special relation" argument based on the temporary state protective custody. 489 U.S. at 198; 109 S.Ct. at 1004. The rationale was that a Due Process duty to protect arose only when the state exercised its authority to restrain the individual's liberty so as to render him unable to care for himself or otherwise forcibly limit the individual's freedom to act on his own behalf. 489 U.S. at 200; 109 S.Ct. at 1005-6.

Consistent with this, the Fifth Circuit held that no "special relation" arose to defeat *DeShaney* unless the plaintiff was involuntarily restrained by the state.

> ". . . This "special relationship" arises only when a person is involuntarily confined or otherwise restrained against his will pursuant to a government order or by affirmative exercise of state power."

*Walton*, 44 F.3d at 1299; *Doe*, 115 F.3d at 1415.

    B.    <u>No "State-Created Danger" Claim is Alleged</u>

In *DeShaney*, the Supreme Court made it clear that the rationale for any exception must be based on the state's affirmative action of rendering the plaintiff unable to care for himself or otherwise imposing a limitation on his freedom to act in self defense. 489 U.S. at 200, 109 S.Ct. at 1005-6. Though Plaintiffs refer to this doctrine as "well-established," neither the U.S. Supreme Court nor the Fifth Circuit has held that merely creating a risk to members of the public meets the *DeShaney* standard. The Fifth Circuit has consistently declined to recognize the theory. *Randolph*, 130 F.3d at 731.

Moreover, the Fifth Circuit has consistently stated that, if the theory is ever adopted, it would require (1) for the state to create an otherwise nonexisting opportunity for the third party to commit the crime; and (2) the state must affirmatively place plaintiff in a position of danger in such a way as to strip the plaintiff of the ability for self defense. *Randolph*, 130 F.3d at 371;

*Doe*, 113 F.3d at 1415. Therefore, if the Fifth Circuit ever recognizes this as a valid exception to *DeShaney*, the Amended Complaint does not meet the threshold.

Defendants did not thrust Agent Rodriguez into the situation in such a way as to cut off her ability to defend herself. The Amended Complaint, ¶ 28, admits Agent Rodriguez responded to a call from the Cameron County *Sheriff*. As a federal agent, she was free to decline a call for assistance from state authorities. Moreover, the Amended Complaint, ¶¶ 31-32, concede she was *leaving* the premises at the time of the incident. Therefore, Defendants did not force her to be in the area, much less strip her of the ability of self defense.

### III. Qualified Immunity

The Response, pp. 14-15, argues at length that, to be "clearly established" the prior right need only be apparent from the caselaw. However, Plaintiffs cite no Fifth Circuit or Southern District case that adopted the "state-created danger" doctrine before July 1998. To the contrary, cases from the Fifth Circuit and the Southern District immediately before and after would have informed officials no such doctrine existed. *See, for example, Randolph*, 130 F.3d at 731; *Callis v. Sellars*, 931 F.Supp. 504, 519-20 (S.D.Tex., 1996) (Atlas, J.); *Martin v. City of League City*, 23 F.Supp.2d 720 (S.D.Tex., 1998) (Kent, J.). If caselaw has not staked out a bright line, qualified immunity almost always protects; public officials have no duty to draw creative analogies from prior cases. *Lassiter v. Alabama A&M Univ. Bd. of Trustees*, 28 F.3d 1146, 1150 (5th Cir. 1994).

Moreover, the only "clearly established" law cited by Plaintiffs is 28 T.A.C. § 211.104 (attached as Exh. 1).[2/] However, the relevant question is whether *federal* law was clearly established. *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991). 28 U.S.C. § 1983 provides no remedy for violating state laws or regulations. *Wyatt v. Cole*, 994 F.2d 1113, 1117-18, 1121 (5th Cir. 1993) *cert. denied* 510 U.S. 971, 114 S.Ct. 470, 126 L.Ed.2d 421 (1993).

A. <u>Alleged Custom or Policy Was Not the Proximate Cause of the Incident</u>

It is apparent that Plaintiffs' Response, ¶¶ 12-13, principally relies on the City's alleged actions after the fact as proof the City had a policy beforehand, citing *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985). Their Response appears to argue that the alleged failure to reprimand either Schoepner or Moore is itself proof that Moore acted pursuant to a policy approved by the City before the shooting.

However, the Fifth Circuit has limited *Grandstaff* to its egregious facts. *Coons v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986); *Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998). In each case, the superior's choice to defend a subordinate's version of the events is no evidence the subordinate acted pursuant to an approved policy or custom. *Coons*, 780 F.2d at 1161; *Snyder*, 142 F.3d at 797. A failure to reprimand or discharge over a single incident is no evidence to prove a pre-existing "culture of recklessness" caused the shooting instead of an isolated error. *Snyder*, 142 F.3d at 797-98.

---

[2/] Moreover, § 211.104 has nothing to do with storage of or safeguarding rifles.

Otherwise, Plaintiffs do not explain how their allegations show (1) any alleged policy was adopted with deliberate indifference with knowledge that a constitutional violation will result; or (2) any such policy caused Ernest Moore to take the rifle without permission. *Snyder*, 142 F.2d at 795-96.

## IV. Conclusion

In conclusion, Plaintiffs have wholly failed to articulate any grounds to defeat Defendants Schoepner and Moore's qualified immunity against a § 1983 claim.

Further, Plaintiffs' § 1983 claims must be dismissed on their merits. Plaintiffs' "special relation" argument wholly ignores recent *en banc* Fifth Circuit decisions. Under existing Fifth Circuit and Southern District of Texas decisions, the "state-created danger" doctrine has yet to be recognized. Even if the Court were to accept it now, these facts fail to pass the stringent standards outlined by the Fifth Circuit.

Therefore, the Court should grant the pending Motions to Dismiss for all Defendants.

Respectfully submitted,

By: _____
TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
Attorney-in-Charge for Defendants, CITY OF HARLINGEN, TEXAS; R.D. MOORE and JIM SCHOEPNER


PASSMORE, WALKER & TWENHAFEL, L.L.P.
Walter J. Passmore
State Bar No. 15560400
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; FAX: 956/686-1276
Attorney for R.D. MOORE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this ___15___ day of April 1999, to the following counsel of record and interested parties:

Attorney for Plaintiffs GILBERTO M. RODRIGUEZ, et al:

| | |
|---|---|
| Mr. Michael Greenberg<br>LAW OFFICES OF RICHARD PENA, P.C.<br>Barton Oaks Plaza Two<br>901 MoPac, Suite 325<br>Austin, TX 78746-5747 | <u>CM RRR Z 240 476 528</u> |
| Mr. Broadus A. Spivey<br>SPIVEY & AINSWORTH, P.C.<br>48 East Avenue<br>Austin, TX 78701-4320 | <u>CM RRR Z 240 476 529</u> |

Attorney of record for Defendant, R.D. MOORE, in His Individual Capacity:

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766

_____
TOM LOCKHART

# Title 37. PUBLIC SAFETY AND CORRECTIONS

## Part VII. TEXAS COMMISSION ON LAW ENFORCEMENT OFFICER STANDARDS AND EDUCATION

## Chapter 211. ADMINISTRATION DIVISION

### § 211.104 Minimum Standards for Annual Firearms Proficiency

(a) For purposes of this section, the term "firearms" shall mean any kind of handgun, shotgun, rifle, or fully automatic weapon that is carried by the individual officer in an official capacity on or off duty, and shall not include any other firearm weapon or any baton, tear gas, restraining or non-lethal stunning device, animal, or other nonfirearm weapon. The term "kind" means caliber or gauge and action type. The term "duty ammunition" means only that ammunition required or permitted by the agency to be carried on duty.

(b) This section does not prevent an agency from establishing weapons proficiency standards that exceed the minimum standards of the commission.

(c) The minimum standards for any annual proficiency course of fire shall be:

(1) use of any target capable of being scored;

(2) a minimum passing score of 70% of the total possible score;

(3) for handguns, a minimum of 50 rounds, including at least five rounds of duty ammunition, fired at ranges from point-blank to at least 15 yards with at least 20 rounds at or beyond seven yards, including at least one timed reloading;

(4) for shotguns, a minimum of five rounds of duty ammunition fired at a range of at least 15 yards;

(5) for rifles, a minimum of 20 rounds of duty ammunition fired at a range of at least 100 yards, however an agency may, in its discretion, allow a range of less than 100 yards but not less than 50 yards if the minimum passing score is raised to 90%;

(6) for fully automatic weapons, a minimum of 30 rounds of duty ammunition fired at ranges from seven to at least 10 yards, including at least one timed reload, with at least 25 rounds fired in full automatic, short bursts of two or three rounds, and at least five rounds fired semi-automatic, if possible with the weapon;

(7) demonstration of proficiency in the care and cleaning of the weapon used; and

(8) in external inspection by the control officer or a range officer, firearms instructor, or gunsmith designated by that control officer to determine the safety and functioning of the weapon.

(d) Any standard contained in this section may, upon agency request, be waived by the executive director or, if denied and upon petition, may be the subject of an administrative hearing held to determine waiver based upon proof by the agency that its proposal meets or exceeds the commission's standards. Specifically, the annual proficiency course of fire may consist of different short courses that may be fired on one or more days as long as they cumulatively meet or exceed the standards found in this section.

(e) Each agency or entity that employs three or more peace officers shall:



(1) appoint a firearms proficiency control officer who must meet only those qualifications set by that agency;

(2) require each peace officer that it employs to demonstrate firearms proficiency to that control officer at least once each calendar year; and

(3) maintain records of this proficiency which shall not be forwarded to the commission.

(f) The first calendar year to demonstrate firearms proficiency shall be 1988. An amendment to this section only affects an annual proficiency course of fire that begins after the effective date of the amendment.

(g) The effective date of this section is January 5, 1988.

**Source:** The provisions of this § 211.104 adopted to be effective January 5, 1988, 12 TexReg 4855; amended to be effective February 1, 1989, 13 TexReg 6273.

---

## Return to Section Index